**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIM. ACT. NO. 1:20-cr-73-TFM |
| | ) | |
| TIA DEYON PUGH | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

The Grand Jury for the Southern District of Alabama indicted the defendant, Tia Deyon Pugh ("Pugh" or "Defendant") on June 24, 2020. The Indictment charged Defendant with one count of impeding law enforcement during civil disorder in violation of 18 U.S.C. § 231(a)(3). *See* Doc. 16. Now pending before the Court is Defendant's *Motion to Dismiss Indictment* (Doc. 52, filed 1/26/21), *Motion to Dismiss Superseding Indictment* (Doc. 75, filed 5/5/21), and the *Supplemental Motion to Dismiss Superseding Indictment* (Doc. 82, filed 5/7/21). The United States filed its responses and Defendant filed her replies. *See* Docs. 66, 68, 70, 71, 91.

The Court held a hearing on April 15, 2021. Based on the motion briefing, the arguments of the parties, and for the reasons set forth herein, the Defendant's *Motion to Dismiss Superseding Indictment* (Doc. 75) and *Supplemental Motion to Dismiss Superseding Indictment* (Doc. 82) are **DENIED** while the *Motion to Dismiss Indictment* (Doc. 52) is **DENIED as moot**.

### I. FACTUAL AND PROCEDURAL BACKGROUND

The essential facts are not seemingly in dispute, but at this stage in proceedings, the Court must generally accept as true the facts presented by the Government as it is not the role of the Court to act as find finder on a motion to dismiss. The "true" facts will ultimately be determined by a jury.

On May 25, 2020, George Floyd died while in police custody in Minneapolis, and as a

result, protests were held nationwide.  On May 31, 2020, a peaceful protest against police brutality followed a planned route through downtown Mobile, Alabama.  Among others at the head of the march was Chief of the Mobile Police Department Lawrence Battiste, IV.  A smaller group of protesters left the planned route and went to the intersection of Government Street and Water Street, where an on-ramp leads to the westbound side of the Interstate 10 highway ("I-10").  I-10 is an interstate highway that connects the east and west coasts of the United States and runs through Mobile, Alabama.  Law enforcement officers constructed a makeshift barricade of marked law enforcement vehicles to block access to I-10.  When the protestors would not disperse, the police deployed tear gas in an effort to disperse the crowd.  After the use of tear gas, one of the protesters, allegedly Pugh, used a bat to break out the window of a police cruiser that was parked on the ramp.  She then fled into the crowd of protestors.  The incident was captured on video by a local news crew.

Eventually, the Mobile Police Department ("MPD") identified Pugh, arrested her, and charged her with state offenses of Inciting a Riot and Criminal Mischief, Third Degree.   After her arrest on state charges, on June 5, 2020, the United States charged Pugh, via Complaint, with a violation of 18 U.S.C. § 231(a)(3).  *See* Doc. 1.  Pugh was arrested and had her initial appearance, preliminary hearing, and detention hearing on June 9, 2020.  *See* Docs. 5, 9, 12, 14.  Pugh was released with conditions.  *See* Docs. 12, 15.

On June 24, 2020, the Grand Jury returned a one-count Indictment with the same charge. *See* Doc. 16.  The Indictment in totality states as follows:

> On or about May 31, 2020, in the Southern District of Alabama, Southern Division, the defendant, TIA DEYON PUGH, did knowingly commit an act, and attempt to commit an act, to obstruct, impede, and interfere with any law enforcement officer lawfully engaged in the performance of an official duty incident to and during the commission of a civil disorder, which in any way and to any degree obstructed, delayed, and adversely affected commerce and the movement of any article

commodity in commerce, in violation of Title 18, United States Code, Section 231(a)(3).

*Id*.  In part due to the COVID-19 pandemic and at the request of both Defendant and the Government, the trial date was delayed multiple times.[1]

On January 26, 2021, on the eve of trial, Defendant filed her first Motion to Dismiss Indictment (Doc. 52) which asserts the Indictment suffers multiple defects that require dismissal.  The motion presents four reasons for dismissal.  First, 18 U.S.C. § 231(a)(3) exceeds Congress' Commerce Clause authority.  Second, 18 U.S.C. § 231(a)(3) is a content-based restriction on expression, fails strict scrutiny, and violates the First Amendment.  Third, 18 U.S.C. § 231(a)(3) is unconstitutionally vague in violation of the Fifth Amendment's Due Process Clause.  Finally, the boilerplate allegations in the indictment violate the presentment and notice functions of grand jury indictments under the Fifth and Sixth Amendments as well as Fed. R. Crim. P. 7(c).  The first three arguments pertain to the constitutionality of the statute while the fourth argument, made in the alternative, challenges the sufficiency of the indictment.  The Government filed its response on March 26, 2021.  *See* Doc. 66.  The Government argues that Pugh fails to carry her burden to show that 18 U.S.C. § 231(a)(3) is unconstitutional and further argues that the Indictment is sufficient.  On April 12, 2021, Pugh filed a reply to the Government's response with further assertions as to the unconstitutionality of the statute.  *See* Doc. 68.  On the eve of the scheduled hearing, the Government filed a supplemental response (Doc. 70) to which the Defendant replied (Doc. 71).  The Court held a hearing on the motion on April 15, 2021.

Subsequent to the hearing, the Government obtained from the Grand Jury a superseding indictment which charged Pugh with the same single-count violation of 18 U.S.C. § 231(a)(3), but

---

[1] A detailed accounting of the multiple delays is summarized in the Court's order on March 25, 2021 delaying the trial to May 17, 2021.  *See* Doc. 65.

added a factual summary of Defendant's alleged actions preceding the recitation of the charge. *See* Doc. 73.

Pugh filed her Motion to Dismiss Superseding Indictment where she incorporates by reference her prior motion to dismiss and its arguments. *See* Doc. 75. She followed with a supplement to her motion arguing that the superseding indictment is still deficient. *See* Doc. 82. The Government filed its response on May 12, 2021 addressing both the newly filed motion to dismiss and the supplement. *See* Doc. 91.

The Court finds that no hearing is necessary on the new motion/response and both are fully submitted and ripe for review.

## II.    DISCUSSION AND ANALYSIS – CONSTITUTIONAL CHALLENGES

To address a threshold matter, both parties include extensive briefing on the legislative history of 18 U.S.C. § 231(a)(3) and discuss the racial motivations for voting for or against it. *See* Doc. 1 at 3-9; Doc. 66 at 16-18; Doc. 68 at 2-7. However, the Government's argument is correct that the Court does not go into legislative history without first looking at the statute's plain language. *See* Doc. 66 at 16.

The mandatory starting point in statutory interpretation is the statute's plain language. *Meridor v. United States AG*, 891 F.3d 1302, 1307 (11th Cir. 2018). And, "where the statutory language provides a clear answer, it ends there as well." *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438, 119 S. Ct. 755, 760, 142 L. Ed. 2d 881 (1999); *see also United States v. Williams*, 790 F.3d 1240, 1245 (11th Cir. 2015) (internal quotations and citation omitted) ("Only when a statute's meaning is inescapably ambiguous will this Court turn to legislative history to aid in interpretation."). The Supreme Court reiterated this point just recently in *Bostock v. Clayton County*, --- U.S. ---, 140 S. Ct. 1731, 1749, 207 L. Ed. 2d 218 (2020). "This Court has explained

many times over many years that, when the meaning of the statute's terms is plain, our job is at an end." *Id*. "The people are entitled to rely on the law as written, without fearing that courts might disregard its plain terms based on some extratextual consideration." *Id*. (citations omitted).

Therefore, the Court first looks at language of the statute at issue, which is as follows:

> Whoever commits or attempts to commit any act to obstruct, impede, or interfere with any fireman or law enforcement officer lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function—Shall be fined under this title or imprisoned not more than five years, or both.

18 U.S.C. § 231(a)(3). "The term 'civil disorder' means any public disturbance involving acts of violence by assemblages of three or more persons, which causes an immediate danger of or results in damage or injury to the property or person of any other individual." 18 U.S.C. § 232(1). "The term 'commerce' means commerce (A) between any State or the District of Columbia and any place outside thereof; (B) between points within any State or the District of Columbia, but through any place outside thereof; or (C) wholly within the District of Columbia." 18 U.S.C. § 232(2).

> The term "federally protected function" means any function, operation, or action carried out, under the laws of the United States, by any department, agency, or instrumentality of the United States or by an officer or employee thereof; and such term shall specifically include, but not be limited to, the collection and distribution of the United States mails.

18 U.S.C. § 232(3).

> The term "law enforcement officer" means any officer or employee of the United States, any State, any political subdivision of a State, or the District of Columbia, while engaged in the enforcement or prosecution of any of the criminal laws of the United States, a State, any political subdivision of a State, or the District of Columbia; and such term shall specifically include members of the National Guard (as defined in section 101 of title 10), members of the organized militia of any State, or territory of the United States, the Commonwealth of Puerto Rico, or the District of Columbia not included within the National Guard (as defined in section 101 of title 10), and members of the Armed Forces of the United States, while engaged in suppressing acts of violence or restoring law and order during a civil disorder.

18 U.S.C. § 232(7).

The Court does not find that the language or definitions are inescapably ambiguous. In discrete parts, the statute makes it illegal to: "commit any act" to "obstruct, impede, or interfere" with a "law enforcement officer" who is "lawfully engaged in the lawful performance of his official duties" in connection with "a civil disorder," where the act "in any way or degree obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function." Though arguably broad, the statute is clear. Therefore, the Court finds the legislative history has no bearing. Much like the Supreme Court noted in *Bostock*, even if the statute's application reaches beyond what the legislators may have intended or expected to address, if no ambiguity exists about how the law applies to the facts before the Court, then the legislative history is not considered. *Bostock*, 140 S. Ct. at 1749 (citations omitted). "'[I]t is ultimately the provisions of' those legislative commands 'rather than the principal concerns of our legislators by which we are governed.'" *Id.* (quoting *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 79, 118 S. Ct. 998, 1002, 140 L. Ed. 2d 201 (1997)). The only exception to this consideration may be under the First Amendment challenge when considering whether the law is content-neutral or content-based, which the Court will address.

Additionally, it is unclear whether Pugh asserts a selective prosecution argument. While Pugh argues that 18 U.S.C. § 231(a)(3) is seldom invoked, she never makes a clear selective prosecution claim. While 18 U.S.C. § 231(a)(3) prosecutions may not be common, it is clearly being applied now to a variety of persons – between the few cases that stemmed from the George Floyd protests that turned into civil disorder and more recently the cases asserted against some participants in the events on January 6, 2021 at the U.S. Capitol. Each of the 18 U.S.C. § 231(a)(3)

prosecutions that arose from those protests encompass individuals of a variety of races and genders with extremely different ideology. Thus, the Court finds that to the extent Pugh asserts a selective prosecution claim, the claim fails.

The Court now turns to the Pugh's first three challenges – all of which relate to the constitutionality of the statute.

## A.    Commerce Clause

Pugh argues that "§ 231(a)(3) unconstitutionally exceeds Congress' authority and intrudes into the States' primary role in general law enforcement because it broadly applies to purely local conduct and requires only an attenuated connection to interstate commerce." Doc. 52 at 12. To the extent Pugh makes a general facial challenge to the constitutionality of the statute as to the interstate commerce requirement, the Court will address it below. However, to the extent Pugh makes a specific factual challenge as to whether the conduct at issue is sufficient to have a substantial effect on interstate commerce, that issue is not yet ripe. The Court cannot presume that either party's version of the facts will ultimately prove true at trial, nor should it at this stage in the proceedings. Should a question remain as to whether the Government has proved that the alleged activities establish the necessary nexus to commerce, Pugh may again raise this issue at trial. *See United States v. Ramos*, Crim. Act. No. 1:02-cr-730-14-AT-AJB, 2016 U.S. Dist. LEXIS 183591, at *20, 2016 WL 8222072, at *7 (N.D. Ga. Dec. 19, 2016), *report and recommendation adopted*, 2017 U.S. Dist. LEXIS 16634, 2017 WL 512752 (N.D. Ga. Feb. 6, 2017); *United States v. Alvarado-Linares*, Crim. Act. No. 1:10-cr-086, 2011 U.S. Dist. LEXIS 155112, at *6-8, 2011 WL 7807742, at *2 (N.D. Ga. Nov. 14, 2011), *report and recommendation adopted* 2012 U.S. Dist. LEXIS 64824, 2012 WL 1632048 (N.D. Ga. May 8, 2012).

Turning to the facial challenge of the statute, the Constitution provides that "Congress shall

have Power . . . [t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes."  U.S. CONST. art. I, § 8, cl. 3.  "This tripartite clause is commonly known as the Foreign Commerce Clause, the Interstate Commerce Clause, and the Indian Commerce Clause, respectively."  *United States v. Davila-Mendoza*, 972 F.3d 1264, 1269 (11th Cir. 2020).  At play in this statute is the Interstate Commerce Clause.

> [The Supreme Court has] identified three general categories of regulation in which Congress is authorized to engage under its commerce power.  First, Congress can regulate the channels of interstate commerce.  Second, Congress has authority to regulate and protect the instrumentalities of interstate commerce, and persons or things in interstate commerce.  Third, Congress has the power to regulate activities that substantially affect interstate commerce.

*Gonzales v. Raich*, 545 U.S. 1, 16, 125 S. Ct. 2195, 2205, 162 L. Ed. 2d 1 (2005)

Pugh relies primarily on *United States v. Morrison*, 529 U.S. 598, 120 S. Ct. 1740, 146 L. Ed. 2d 658 (2000) and *United States v. Lopez*, 514 U.S. 549, 115 S. Ct. 1624, 131 L. Ed. 2d 626 (1995).  In *Lopez*, the Supreme Court identified the following three categories of activity that Congress may regulate under its Commerce Clause power: (1) channels of interstate commerce; (2) instrumentalities of interstate commerce, or persons or things in interstate commerce; and (3) activities that substantially affect interstate commerce.  *Lopez*, 514 U.S. at 558-59, 115 S. Ct. at 1629-30; *see also Taylor v. United States*, --- U.S. ---, 136 S. Ct. 2074, 2079, 195 L. Ed. 2d 456 (2016) (quoting *Lopez*).  Next, in *Morrison*, the Supreme Court instructed courts to consider four factors to determe whether a regulated activity "substantially affects" interstate commerce: (1) whether Congress made findings regarding the regulated activity's impact on interstate commerce; (2) whether the statute contains an "express jurisdictional element" that limits its reach; (3) whether the regulated activity is commercial or economic in nature; and (4) whether the link between the prohibited activity and the effect on interstate commerce is attenuated.  *Morrison*, 529 U.S. at 610-12, 120 S. Ct. 1749-51.  Recently, the Supreme Court stated that the third category –

those that "substantially affect" commerce – "may be regulated so long as they substantially affect interstate commerce in the aggregate, even if their individual impact on interstate commerce is minimal." *Taylor*, 136 S. Ct. at 2079.

The Court agrees with the Government where it notes that 18 U.S.C. § 231(a)(3) contains a jurisdictional element that materially distinguishes it from the statutes struck down in *Lopez* and *Morrison*. In sum, courts have held that despite *Lopez* and *Morrison*, the Government need only show a minimal effect on interstate commerce when the statute contains an explicit jurisdictional element. For example, in *United States v. Castleberry*, the Eleventh Circuit upheld the Hobbs Act because it contained a jurisdictional element that states "in any way or degree obstructs, delays, or affects commerce or the movements of any article or commodity in commerce," the "substantially affects" test is not applicable, and the Government need only show a minimal effect on interstate commerce to support a conviction. 116 F.3d 1384, 1387 (11th Cir. 1997). In *United States v. Scott*, the Court held that 18 U.S.C. § 922(g) was not a facially unconstitutional exercise of Congress' power under the Commerce Clause because it contains an express jurisdictional requirement, and the element was satisfied when there was a minimal nexus to interstate commerce. 263 F.3d 1270, 1273 (11th Cir. 2001); *see also United States v. Jordan*, 635 F.3d 1181, 1189 (11th Cir. 2011) (citing *Scott* and reiterating holding); *United States v. Thomas*, 810 F. App'x 789, 796 (11th Cir. 2020) (reiterating facial challenge failed with the amended § 922(g) due to the amendment including explicit jurisdictional requirement "affecting interstate commerce.").[2]

Though not binding, the Court finds the language from other circuit cases to be instructive.

---

[2] In this Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2 (effective Dec. 1, 2014); *see also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

The Sixth Circuit states "[i]ndeed, we regard the presence of such a jurisdictional element as the touchstone of valid congressional use of its Commerce Clause powers to regulate non-commercial activity." *United States v. Coleman*, 675 F.3d 615, 620 (6th Cir. 2012) (upholding the Sex Offender Registration and Notification Act ("SORNA") with an explicit jurisdictional element that is not directed as economic activity). As noted by the Fourth Circuit "Congress may regulate violent conduct interfering with interstate commerce even when the conduct itself has a 'minimal' effect on such commerce." *United States v. Hill*, 927 F.3d 188, 199 (4th Cir. 2019) (citations omitted).

Though Pugh valiantly attempts to distinguish these cases from the situation at hand, the Court cannot find sufficient distinction to stray from the binding principles espoused by the Eleventh Circuit. The Court agrees that for the jurisdictional element to be meaningful, it must be more than a "pretextual incantation evoking the phantasm of commerce." *United States v. Maxwell*, 446 F.3d 1210, 1218 (11th Cir. 2006) (quoting preceding opinion in *United States v. Maxwell*, 386 F.3d 1042, 1062 (11th Cir. 2004)). However, the Court finds that, from a facial challenge, the jurisdictional language in 18 U.S.C. § 231(a)(3) is sufficiently established and not merely language with no substance.

In the statute at hand, first, there must be a civil disorder that, in turn, affects commerce as defined by 18 U.S.C. § 232(2) where law enforcement (or a fireman) is engaged in the lawful performance of his duties incident to, or during, that same civil disorder and then the defendant commits or attempts to commit an act to obstruct, impede, or interfere with the performance of those duties. The jurisdictional hook as stated already limits the conduct to specific circumstances. It does not encompass all instances where a person interferes with law enforcement. Rather 18 U.S.C. § 231(a)(3) is restricted to contemporaneous interference with law enforcement officers

performing their duties during civil disorders affecting interstate commerce. Despite Pugh's attempts to distinguish from the above principles, she cites no case where a statute has been invalidated where there is an explicit jurisdictional hook, nor did the Court find one in its own independent research. Therefore, the Court finds that 18 U.S.C. §231(a)(3) with its jurisdictional hook is sufficient to survive a facial challenge. Whether or not a case can survive a factual challenge is to be decided on a case-by-case basis and is a matter for the jury and/or court at trial.

**B.    First Amendment – Freedom of Speech**

Pugh also argues that 18 U.S.C. § 231(a)(3) violates the First Amendment in two ways. Doc. 52 at 21. First, that it is a "substantially overbroad regulation of protected expression because it imposes steep criminal penalties on an expansive range of speech and expressive conduct." *Id*. Second, because it was "enacted for the express legislative purpose of suppressing the content of messages favoring civil rights advocacy, and the statute's content-based text and purpose fail strict scrutiny." *Id*.

A statute may be overbroad if "it prohibits a substantial amount of protected speech." *United States v. Williams*, 553 U.S. 285, 292, 128 S. Ct. 1830, 170 L. Ed. 2d 650 (2008). "Overbreadth attacks have also been allowed where the Court thought rights of association were ensnared in statutes which, by their broad sweep, might result in burdening innocent associations." *Broadrick v. Oklahoma*, 413 U.S. 601, 612, 93 S. Ct. 2908, 2916, 37 L. Ed. 2d 830 (1973) (citations omitted). Further, an otherwise constitutional statute "may nevertheless be 'overbroad' if in its reach it prohibits constitutionally protected conduct." *Grayned v. City of Rockford*, 408 U.S. 104, 114, 92 S. Ct. 2294, 2302, 33 L. Ed. 2d 222 (1972); *see also City of Houston v. Hill*, 482 U.S. 451, 458, 107 S. Ct. 2502, 2508, 96 L. Ed. 2d 398 (1987) ("[I]n a facial challenge to the overbreadth and vagueness of a law, a court's first task is to determine whether the enactment reaches a

substantial amount of constitutionally protected conduct."). "As a general matter, laws may not restrict speech simply because of its content or assemblies simply due to distaste for the common cause of those meeting, but reasonable time, place, and manner regulations are permissible to further significant governmental interests." *United States v. Huff*, Crim. Act. No. 3:10-CR-73, 2011 U.S. Dist. LEXIS 36766, at *3-4, 2011 WL 1308099, at *1 (E.D. Tenn. Jan. 3, 2011) (internal quotations omitted) (quoting *Grayned*, 408 U.S. at 116, 92 S. Ct. at 2303). Finally, "[r]arely, if ever, will an overbreadth challenge succeed against a law or regulation that is not specifically addressed to speech or to conduct necessarily associated with speech (such as picketing or demonstrating)." *Virginia v. Hicks*, 539 U.S. 113, 124, 123 S. Ct. 2191, 2199, 156 L. Ed. 2d 148 (2003).

The Court first notes that 18 U.S.C. § 231(a)(3) is not a specific statute regulating speech, but rather applies to conduct; however, the statute does not apply to all conduct, but rather conduct in the midst of a civil disorder. Though there is not much caselaw on the statute, at least one circuit specifically addressed the matter. *See United States v. Mechanic*, 454 F.2d 849 (8th Cir. 1971). In *Mechanic*, the Eighth Circuit states "[t]he short answer to the defendants' contention that the statute prohibits protected speech is that, as we read it, § 231(a) (3) has no application to speech, but applies only to violent physical acts." *Id*. at 852. The Government, here, also notes the same interpretation in *United States v. Rupert*, Crim. Act. No. 0:20-cr-104, 2021 U.S. Dist. LEXIS 46798, 2021 WL 942101 (D. Minn. Mar. 12, 2021). However, one major point in *Rupert* is that it is bound by Eight Circuit precedent and this Court is not.

The Court here agrees that 18 U.S.C. § 231(a)(3) applies to conduct, but not necessarily the more stringent view of the Eight Circuit that it only applies to violent physical acts. 18 U.S.C. § 231(a)(3) specifically states "any act to obstruct, impede, or interfere." 18 U.S.C. § 231(a)(3).

The only place where violence is referenced is in the definition of "civil disorder" where it means "any public disturbance involving acts of violence."  18 U.S.C. § 232(1).  The Eight Circuit links the violence of the civil disturbance to the act of the individual.  However, while that may very well be the case in such situations, it does not necessarily require it.  Rather, the act must simply be one that obstructs, impedes, or interferes with law enforcement who are engaged in the performance of duties incident to, and during the commission of, a civil disorder.  It is possible under this statutory construction to have a nonviolent act which accomplishes the same goal.  Therefore, this Court construes the statute more broadly to include exactly what it says: "any act."

Moreover, "[u]nlawful conduct is not protected conduct.  The First Amendment does not give individuals the right to break a generally applicable law for expressive purposes."  *United States v. Huff*, 630 F. App'x 471, 486 (6th Cir. 2015) (citing *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 65-66, 126 S. Ct. 1297, 164 L. Ed. 2d 156 (2006)).  Much like the Sixth Circuit's analysis in *Huff* as it relates to 18 U.S.C. § 231(a)(2) – a sister provision to the statute at issue here – there is nothing in 18 U.S.C. § 231(a)(3) that prohibits expression or association.  Rather, it makes unlawful the deliberate act of obstructing, impeding, or interfering with law enforcement performing their duties at a civil disorder.  The fact that the Court could conjure some hypothetical scenario of prosecutorial overreach does not invalidate an entire statute on a facial challenge under the First Amendment.  *See Williams*, 553 U.S. at 303, 128 S. Ct. at 1844 (quoting *Members of City Council of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 800, 104 S. Ct. 2118, 80 L. Ed. 2d 772 (1984)) ("The mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge.").  Rather, such a scenario could be challenged in an "as-applied" challenge.

Pugh also argues that 18 U.S.C. § 231(a)(3) regulates the content of protected expression

without a permissible justification. To succeed in a typical facial attack, Pugh would have to establish "that no set of circumstances exists under which [18 U.S.C. § 231(a)(3)] would be valid . . . or that the statute lacks any plainly legitimate sweep." *United States v. Stevens*, 559 U.S. 460, 472, 130 S. Ct. 1577, 1587, 176 L. Ed. 2d 435 (2010) (internal citations and quotations omitted). Further, "[i]n the First Amendment context, however, this Court recognizes a second type of facial challenge, whereby a law may be invalidated as overbroad if a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Id.* at 473, 130 S. Ct. at 1587 (citation and internal quotations omitted).

Finally, the Supreme Court's precedents "allow the government to 'constitutionally impose reasonable time, place, and manner regulations' on speech, but the precedents restrict the government from discriminating 'in the regulation of expression on the basis of the content of that expression.'" *Barr v. Am. Ass'n of Political Consultants*, --- U.S. ---, 140 S. Ct. 2335, 2346, 207 L. Ed. 2d 784 (2020) (quoting *Hudgens v. NLRB*, 424 U.S. 507, 520, 96 S. Ct. 1029, 47 L. Ed. 2d 196 (1976)). Content-based laws are subject to strict scrutiny and content-neutral laws are subject to a lower level of scrutiny. *Id.* (citing *Reed v. Town of Gilbert*, 576 U.S. 155, 163-66, 135 S. Ct. 2218, 192 L. Ed. 2d 236 (2015)). "In order to determine whether a regulation of speech is content based, we must first consider whether, 'on its face,' it 'draws distinctions based on the message a speaker conveys.'" *Harbourside Place, LLC v. Town of Jupiter*, 958 F.3d 1308, 1317 (11th Cir. 2020) (quoting *Reed*, 576 U.S. 155, 135 S. Ct. at 2226). The Court "may also consider whether the regulation was enacted due to an impermissible motive, i.e., the suppression of free expression." *Id.* (citations omitted). "When a regulation is content based on its face, strict scrutiny applies and there is no need for the speaker to also show an improper purpose." *Id.* (citing *Reed*, 135 S. Ct. at 2228).

In looking at 18 U.S.C. § 231, the Court finds it is content-neutral on its face, so the Court must look to the second part of the *Reed* test – whether the regulation was enacted for the suppression of free expression. Even considering the extensive discussion that Pugh devotes to Senator Russell B. Long of Louisiana and her argument that his involvement somehow establishes the discriminatory intent of 18 U.S.C. § 231, the Court cannot find that to be true. Even assuming that Senator Long did intend what Pugh asserts, the negative intentions of a single senator cannot be imputed to all proponents of the bill. Moreover, as shown in the ultimate vote, the bill passed with Senator Long voting in the negative and other high-profile civil rights supporters voting for the bill. Though the time frame in question clearly had a sharp divide among Congress on the rights and beliefs of those involved in the Civil Rights Movement, that alone cannot establish a content-based intent. Rather, the statute on its face is content neutral and applies to a limited category of expressive conduct – civil disorder affecting interstate commerce and then the <u>act</u> to, or attempt to obstruct, impede, or interfere with, law enforcement or firemen performing their official duties involving the civil disorder. There is nothing to indicate that it is content-based because it does not apply to any particular speech – it does interfere with any lawful public gatherings to express ideology or speak out on various matters. "The principal inquiry in determining content neutrality . . . is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." *Ward v. Rock Against Racism*, 491 U.S. 781, 791, 109 S. Ct. 2746, 2754, 105 L. Ed. 2d 661 (1989). "A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." *Id*. (citation omitted). Thus, strict scrutiny would not apply.[3]

---

[3] The Government argues that even if 18 U.S.C. § 231(a)(3) regulated speech to a degree that a

## C.  Due Process Clause

Pugh next challenges the statute arguing that it is unconstitutionally vague and violates the Due Process Clause of the Fifth Amendment.

"It is established that a law fails to meet the requirements of the Due Process Clause if it is so vague and standardless that it leaves the public uncertain as to the conduct it prohibits." *City of Chicago v. Morales*, 527 U.S. 41, 56, 119 S. Ct. 1849, 1859, 144 L. Ed. 2d 67 (1999) (quoting *Giaccio v. Pennsylvania*, 382 U.S. 399, 402-03, 86 S. Ct. 518, 15 L. Ed. 2d 447 (1966)).  Further, the "void-for-vagueness doctrine requires that a penal statute 'define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.'" *United States v. Marte*, 356 F.3d 1336, 1342 (11th Cir. 2004) (quoting *United States v. Fisher*, 289 F.3d 1329, 1333 (11th Cir. 2002)).  That said, "litigants cannot argue that a law is vague based on how it might apply to a hypothetical scenario." *Doe v. Marshall*, 367 F. Supp. 3d 1310, 1334 (M.D. Ala. 2019).  Instead, courts "consider whether a statute is vague as applied to the particular facts at issue." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 18, 130 S. Ct. 2705, 2718-19, 177 L. Ed. 2d 355 (2010).  That is because "a plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Id*. at 18-19, 130 S. Ct. 2719 (quoting *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495, 102 S. Ct.

---

level of scrutiny applied, the Court should apply intermediate scrutiny.  *See* Doc. 66 at 38.  The Court disagrees.  As noted by Justice Thomas in his concurring opinion in *Bruni v. City of Pittsburgh*, 141 S. Ct. 578, 208 L. Ed. 2d 562 (2021), it would appear that in the context of a First Amendment challenge, intermediate scrutiny "is incompatible with current First Amendment doctrine as explained in [*Reed*] and *McCullen v. Coakley*, 573 U.S. 464, 134 S. Ct. 2518, 189 L. Ed. 2d 502 (2014)." *Bruni*, 141 S. Ct. at 578 (Thomas, J., concurring) (quoting *Price v. Chicago*, 915 F.3d 1107, 1117 (7th Cir. 2019).  Strict scrutiny would apply if a law were determined to be content-based.

1186, 71 L. Ed. 2d 362 (1982)).

The Supreme Court clarified that the general rule applies to vagueness challenges that implicate the First Amendment. *See Holder*, 561 U.S. at 20, 130 S. Ct. at 2719. "[A] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others. That rule makes no exception for conduct in the form of speech." *Id*. (internal citations omitted); *see also United States v. Di Pietro*, 615 F.3d 1369, 1372 (11th Cir. 2010) (citing *Holder*, the holding that void-for-vagueness challenges are separate and distinct from overbreadth challenges, and the inability to bring challenges that fall squarely within the rule prohibiting a facial vagueness challenge by one to whom a statute may be constitutionally applied.).

While Pugh argues in her reply brief that "the government provides only a passing defense of the statute under the void for vagueness provision of the Due Process Clause," the Court notes that she merely glosses over the United States' primary defense on the challenge – i.e., that she lacks standing to bring a facial vagueness challenge. *Compare* Response, Doc. 66 at 39-40 *with* Reply, Doc. 68 at 29-31. When considering the law above, Pugh must first demonstrate that 18 U.S.C. § 231(a)(3) is vague as applied to her before she may raise a facial vagueness challenge. Pugh fails to do so. By Pugh's own argument, "the statute leaves individuals uncertain regarding criminalized conduct." Moreover, Pugh seeks to have the Court declare that 18 U.S.C. § 231(a)(3) is unconstitutionally vague for either (or both) grounds: that the statute fails to provide fair notice and susceptible to arbitrary and discriminatory enforcement. This is the precise kind of challenge prohibited by binding caselaw. *Di Pietro*, 615 F.3d at 1373.

Consequently, Pugh lacks standing to raise a general facial vagueness challenge pursuant to the Due Process Clause and the motion to dismiss is denied on this basis.

### III.    DISCUSSION AND ANALYSIS – SUFFICIENCY OF THE INDICTMENT

In the alternative, Pugh challenges the sufficiency of the indictment.  Doc. 52 at 37-38; Doc. 82 generally.  In its original response and at the hearing, the Government asserted that the Indictment tracks the language of the statute and conforms with the requirements of Fed. R. Crim. P. 7(c).  The Court disagrees.

"In all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation. . . ." U.S. CONST. AMEND. VI.  To comply with the Federal Rules of Criminal Procedure, an Indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged" and include the "provision of law that the defendant is alleged to have violated." FED. R. CRIM. P. 7(c)(1).

> "An indictment is considered legally sufficient if it: (1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense." *United States v. Jordan*, 582 F.3d 1239, 1245 (11th Cir. 2009) (citation and quotations omitted).  "In determining whether an indictment is sufficient, we read it as a whole and give it a 'common sense construction.'" *Id.* (citing *United States v. Gold*, 743 F.2d 800, 813 (11th Cir. 1984) and *United States v. Markham*, 537 F.2d 187, 192 (5th Cir. 1976)).  "In other words, the indictment's 'validity is to be determined by practical, not technical, considerations.'" *Jordan*, 582 F.3d at 1245 (citing *Gold*, 743 F.2d at 812).

*United States v. Schmitz*, 634 F.3d 1247, 1259-60 (11th Cir. 2011); *see also United States v. Chalker*, 966 F.3d 1177, 1190 (11th Cir. 2020) (quoting *United States v. Woodruff*, 296 F.3d 1041, 1046 (11th Cir. 2002)) ("[An indictment] is sufficient if it (1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense.").  In making this determination, the Court must take the allegations in the indictment as true.  *United States v. Plummer*, 221 F.3d 1298, 1302 (11th

Cir. 2000).

The original Indictment against Pugh stated:

On or about May 31, 2020, in the Southern District of Alabama, Southern Division, the defendant, TIA DEYON PUGH, did knowingly commit an act, and attempt to commit an act, to obstruct, impede, and interfere with any law enforcement officer lawfully engaged in the performance of an official duty incident to and during the commission of a civil disorder, which in any way and to any degree obstructed, delayed, and adversely affected commerce and the movement of any article commodity in commerce, in violation of Title 18, United States Code, Section 231(a)(3).

Doc. 16.

While this may track the statute (precisely the Court might add), it provides no information as to exactly what conduct Pugh did to violate the statute. If an indictment tracks the language of the statute, it must be accompanied with a statement of facts and circumstances that will inform the accused of the specific offense, coming under the general description, with which he is charged. *United States v. Sharpe*, 438 F.3d 1257, 1263 (11th Cir. 2006); *see also Hamling v. United States*, 418 U.S. 87, 117-18, 94 S. Ct. 2887, 3908, 41 L. Ed 2d 590 (1974) (quoting *United States v. Hess*, 124 U.S. 483, 487 (1888)) ("Undoubtedly the language of the statute may be used in the general description of an offence, but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific [offense], coming under the general description, with which he is charged."). More recently, the Eleventh Circuit stated "[w]hile it is generally enough for an indictment to track statutory language . . . simply tracking statutory language does not suffice when the resulting indictment fails to 'fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the [offense] intended to be punished." *United States v. Johnson*, 981 F.3d 1171, 1179 (11th Cir. 2020) (citation and internal quotations omitted).

The Indictment contains no information that establishes that (1) at the time of Pugh's

conduct that civil disorder existed, (2) the civil disorder(s) in some way interfered with, obstructed, delayed or adversely affected commerce, (3) law enforcement was lawfully responding to that civil disorder, and (4) that Pugh knowingly committed an act to obstruct, impede, or interfere with those efforts by doing _____. The Court deliberately places a blank in the fourth number because that is the point. The Indictment says nothing other than Pugh violated 18 U.S.C. § 231(a)(3). There is no "To Wit:" clause identifying the conduct or some other means to relay exactly what Pugh allegedly did. In fact, by adding "on or about" in front of the date, the Government then expands the date to a reasonable timeframe before and after May 31, 2020. Rather, at some unspecified place and generalized range of days/time, Pugh did something that the Government alleges violated the statute.

In no way does this satisfy the pleading requirements or satisfy the Eleventh Circuit's discussion on charging requirements. Put differently, the Government skipped the first requirement of Rule 7(c)(1): that there "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." FED. R. CRIM. P. 7(c)(1).

As a point of comparison, in reviewing the Government's Supplemental Response (Doc. 70), the Court pulled the Indictment from the comparator case, *Rupert*, Civ. Act. No. 0:20-cr-104 from the District of Minnesota's docket sheet. Though the Government relies upon this case for another purpose, the Court finds the Indictment in that case to contain far more detail than the instant matter. *See id.*. D. Minn. Docket Sheet, Doc. 12. The Indictment in the *Rupert* case is six pages long. Admittedly, it contains three counts, but leads with an extensive statement of facts with precise details as to exactly what/when/where Rupert allegedly did. Only then does it move to a recitation of the statute in Count 1 incorporating the preceding paragraphs.

In the instant case, the Government attempted to argue that Pugh had the original

Complaint (Doc. 1) to rely upon. However, while a Complaint is a proper means to initiate a criminal case, the Indictment is the controlling document here and cannot incorporate by reference the prior information.

As such, the Court finds that the original Indictment was fatally deficient. However, dismissal of that Indictment has been rendered moot by the Grand Jury issuing a Superseding Indictment. Therefore, the Court now turns to Pugh's assertion that the Superseding Indictment is also deficient. *See* Doc. 82.

The Superseding Indictment includes the same charge as the original Indictment, but now leads with two sections entitled "General Allegations" and "Pugh's Contact with Law Enforcement" which are then incorporated into the single-count charged. *See* Doc. 73 at ¶¶ 1-9.

Pugh alleges it is still insufficient for several reasons. First, "the use of the conclusory term 'civil disorder'" does not include the statutory definition in § 232(1) or the relationship to the "act" charged. *See* Doc. 82 at 2. Second, it fails to include "violent" in front of "act" as required by *Mechanic*. *Id*. Third, "the inclusion of the term 'knowingly' does not include a specific intent." *Id*. at 3. Fourth, the Superseding Indictment fails to specify how the alleged civil disorder or Defendant's act obstructed, delayed, and adversely affected commerce and the movement of any article or commodity in commerce. *Id*. at 3-4. The Government timely filed its response.[4] *See* Doc. 91.

Here, the Court finds that the Superseding Indictment does meet the requirements of Rule

---

[4]   The United States indicated that it was not separately ordered to respond to the supplemental motion to dismiss the superseding indictment, but addressed both in a combined response "out of an abundance of caution." *See* Doc. 91 at 2, n. 1. However, the Court would have thought given the short time before May 17 trial date and the fact the supplement came in *prior* to the Court's ordered response deadline of May 12 that it would have been obvious that the Court expected the Government to address *both* matters.

7(c) in that the indictment contains "a plain, concise, and definite written statement of the essential facts constituting the offense charged." As it still tracks the language of the statute, the Government has now included the accompanying statement of facts and circumstances that informs the accused of the specific offense, coming under the general description, with which she is charged. *Sharpe*, 438 F.3d at 1263.

With regard to Pugh's first argument, the Court agrees with the Government that it is not required that the indictment define legal terms of art – like "civil disorder." The definition of civil disorder is not a question of fact, but rather a legal term of art. While the fact-finder may find whether or not civil disorder existed, it does not get to define the term. The "legal definition . . . does not change with each indictment" and "it is a term sufficiently definite in its legal meaning to give a defendant notice of the charge against [her]." *Id*.

Next, Pugh avers that the failure to include the term "violent" in front of "act" renders the indictment deficient under the *Mechanic* analysis. As the Court noted earlier in this opinion, the undersigned does not agree with the non-binding analysis from the Eighth Circuit case that violence is required. *Supra* pages 12-13. The Court construes the statute more broadly to include exactly what it says: "any act." Therefore, the omission of the word "violent" does not render the Superseding Indictment deficient.

Third, Pugh alleges, "the inclusion of the term 'knowingly' does not include a specific intent." The Court is not persuaded. While an indictment should set forth the "essential facts" of the charged offense as required by Fed. R. Crim. P. 7(c)(1), it is not necessary to recite the entirety of the evidence the government will present at trial to support the charge. *See United States v. Lehder-Rivas*, 955 F.2d 1510, 1519 (11th Cir. 1992); *United States v. Martell*, 906 F.2d 555, 558 (11th Cir. 1990). The language of the Superseding Indictment tracks the statute and includes

sufficient facts to put Defendant on notice of the charges against her. The issue of the jury finding the link of Pugh's intent behind her actions to the statute's element to disrupt, impede, and interfere with law enforcement is a matter for jury instructions and/or the jury verdict form.

Finally, Pugh's final (and in her words) "perhaps most [notable]" argument, the Superseding Indictment is silent as to how the alleged civil disorder or the defendant's act "in any way and to any degree obstructed, delayed, and adversely affected commerce and the movement of any article and commodity in commerce." Doc. 82 at 3. Again, an indictment need not be a recitation of every issue that is going to be addressed at trial. It need not address every factual issue of "who, what, where, when, why," but merely must address the essential elements of the offense, notify the accused of the charges to be defended against, and enable the defendant to rely upon a judgment as a bar against double jeopardy. *Chalker*, 966 F.3d at 1190. Moreover, the jurisdictional interstate commerce element may be proven in multiple ways – much like the same element in 18 U.S.C. § 922(g). An indictment need not specify every way that it intends to prove its case.

The Court is satisfied that the Superseding Indictment meets those three requirements. The Superseding Indictment sufficiently alleges the elements of the offense, that: (1) at the time of Pugh's alleged conduct, civil disorder existed; (2) that civil disorder in some way interfered with, obstructed, delayed, or adversely affected interstate commerce; (3) law enforcement was lawfully responding to that civil disorder; and (4) Pugh knowingly acted to obstruct, impede, or interfere with those law enforcement efforts by using a bat to smash the police vehicle's window. The Court is quite certain that Pugh (and her counsel) are on notice of the elements, the charges, and the ability to rely upon any judgment (if one occurs) as a bar against double jeopardy.

Therefore, the Court finds that the Superseding Indictment is sufficient and as it is the

controlling charging document, the request for dismissal is due to be denied.

### IV.    CONCLUSION

For the reasons articulated above, Defendant's *Motion to Dismiss Superseding Indictment* (Doc. 75) and *Supplemental Motion to Dismiss Superseding Indictment* (Doc. 82) are **DENIED** while the *Motion to Dismiss Indictment* (Doc. 52) is **DENIED as moot**.

**DONE** and **ORDERED** this 13th day of May 2021.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES DISTRICT JUDGE