IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | * |
| | *    Criminal No. 20-cr-0073-TFM |
| v. | * |
| | * |
| TIA DEYON PUGH | * |
| | * |
| | * |

**UNITED STATES' RESPONSE TO MOTION TO STRIKE VENIRE,
OR IN THE ALTERNATIVE, CONTINUE THE TRIAL**

Comes now the United States, by and through, Sean P. Costello, the United States Attorney for the Southern District of Alabama, and files this response to defendant Tia Deyon Pugh's motion to strike the venire, or in the alternative, continue the trial set to begin tomorrow morning. [Doc. No. 101]   For the reasons stated herein, Pugh's eleventh-hour motion should be denied.

### BACKGROUND

On April 29, 2021, a grand jury in the Southern District of Alabama returned a superseding indictment charging Pugh with one count of violating 18 U.S.C. § 231(a)(3).[1]   [Doc. No. 73]   Prior to the return of the superseding indictment, this case was set for a specific trial date, May 17, 2021, since late March 2021.   [Doc. No. 66]   Pugh was arraigned on the superseding indictment on May 5, 2021, and she did not request a continuance of this trial at that time.  *See* [Doc. No. 77]

However, mid-afternoon on Saturday, May 15, 2021, — less than 48 hours before jury selection begins — Pugh filed a motion to dismiss the venire, or in the alternative, to continue this trial.   [Doc. No. 101]   Essentially, Pugh claims the manner in which this Court selects potential jurors is constitutionally deficient.   However, Pugh acknowledges that presently she cannot prove this allegation, and seeks a continuance to hire an expert to further litigate this matter.   [*Id.*, pp. 8–9]

---

[1]   Pugh had previously been charged with this same offense in the original indictment, which was returned by the grand jury on June 24, 2020.   [Doc. No. 16]

1

The United States was ordered to respond to this motion by 5:00 pm on Sunday, May 16, 2021, with the matter to be taken up at 8:00 am on Monday, May 17, 2021, immediately before jury selection.[2] [Doc. No. 100]

## ANALYSIS

As an initial matter, it is important to examine Pugh's reasoning for filing this motion on the eve of trial. According to Pugh, she filed her motion after "[a] review of the juror questionnaires published to the parties on May 13, 2021, reveal[ed] that of the 55 individuals summoned to appear, only 5 identify as African Americans." [Doc. No. 101, p. 2] However, Pugh's constitutional challenge is to the *process* by which potential jurors are selected in this district.

If Pugh believes this Court's potential juror selection process is unconstitutional, then she did not need to wait to see this specific venire to raise such a challenge. According to her own motion, the alleged constitutional deficiency was ripe for litigation as of April 1, 2021. *See* [*Id.*, p. 4] Yet, she waited to file this motion until 42 hours before jury selection. The fact that the "juror lists were just made available on May 13, 2021," *see* [*Id.*, p. 6], is irrelevant to the constitutional claim she presently makes, and her failure to file this motion earlier is not a valid reason to continue this trial yet again.

Pugh's true reasoning for challenging the constitutionality of this Court's jury selection process is apparent. She does not like the racial makeup of the venire from which the jurors for her trial will be selected.

To prove that this Court's process for selecting potential jurors violates Pugh's rights under the Sixth Amendment, she must establish: "(1) the allegedly excluded group is a distinctive group in the community; (2) the representation of this group in the venire form which the jury was selected was not fair and reasonable in relation to the number of such persons in the community; and (3) the

---

[2] The fact that Pugh intended to file a motion of this nature was discussed between defense counsel and the United States on Thursday, May 13, 2021, and the Court was made aware of this during a status conference on Friday, May 14, 2021. However, Pugh's motion was not filed until 2:10 pm on Saturday, May 15, 2021.

2

under-representation was due to systemic exclusion of the group in the jury-selection process." *United States v. Clarke*, 562 F.3d 1158, 1163 (11th Cir. 2009); *see also Duren v. Missouri*, 439 U.S. 357, 364 (1979).

The United States agrees with Pugh that African Americans are a "distinctive group in the community." Thus, the first prong of the test is satisfied.

Problems arise, however, with Pugh's attempt to establish the second prong. As a threshold matter, Pugh's statistics are inaccurate. As noted above, Pugh claims that only 5 of the 55 potential jurors — *i.e.*, only 9% — identify as African American. [Doc. No. 101, p. 2] However, Pugh neglected to include Venireperson #14, a 56-year old African American woman. Thus, there are at least six potential jurors who identify as part of the distinctive group Pugh claims has been excluded from the venire. Furthermore, there are three other potential jurors, Venirepersons # 33, 41, and 53, all of whom did not identify any race at all. Thus, there are at least 6, and potentially as many as 9, African American potential jurors on this venire. Accordingly, the percentage of African Americans in the venire is at least 11% and potentially as high as 16%.[3]

According to Pugh, a fair cross section of the African American community in the Southern District of Alabama, Southern Division, is 28%. [Doc. No. 101, p. 3] However, this figure is largely irrelevant with respect to Pugh's present constitutional challenge.

Pugh claims the percentages in her motion come from the "latest census show[ing] the actual population percentages of African Americans in each" of the relevant counties. [*Id.*] Yet, there is no

---

[3] Also misleading is Pugh's claim that the Court's jury selection process "enables the very real prospect of an all-white or nearly all-white jury to decide her guilt or innocence." [Doc. No. 101, p. 8] This allegation fails to take into account the non-African American jurors who identify as another racial minority. Venirepersons #2, 16, and 24 identify as Native American or Hispanic. If you do not consider the three jurors who did not identify their race, then 9 of the 52 potential jurors identify as being part of some identifiable racial minority. That is 17% of the total venire. However, when considering only the first 30 potential jurors, as Pugh does as part of her statistical argument, *see* [*Id.*, p. 2], then the percentage of potential jurors identifying as a racial minority is 20%. Thus, Pugh's claim that the Court's juror selection process may lead to "the very real prospect" of her being tried "by an all-white or nearly all-white" jury is purely speculative and based on misleading statistics.

indication that Pugh's statistics have been adjusted to account for individuals who are under the age of 18 or who are otherwise ineligible for federal jury service. This is important, because the Eleventh Circuit has held that the second prong "is not satisfied where the absolute disparity between the percentage of a distinctive group *among the population eligible for jury service* and the percentage of the distinct group on the jury panel is ten percent or less." *Clarke*, 562 F.3d at 1163 (added emphasis) (citing *United States v. Grisham*, 63 F.3d 1074, 1078 (11th Cir. 1995)). Since Pugh's statistics do not appear to be limited to the percentage of African Americans eligible for jury service, it is impossible to know whether the actual disparity is great or less than 10%. This is Pugh's motion, and she has the burden to establish her *prima facie* case. *See Grisham*, 63 F.3d at 1080. She has failed to establish the second prong.

Finally, statistics alone do not make a Court's process in selecting potential jurors unconstitutional. Since statistical anomalies can arise during any random selection process, Pugh must establish that the reason for this disparity is "due to the systemic exclusion of African-Americans." *See Clark*, 562, F.3d at 1163. Pugh concedes that she cannot do so at this time. [Doc. No. 101, pp. 6–8] Accordingly, Pugh moves this Court to continue trial so that she has "additional time and funds to secure an expert to review the current process . . . to provide an opinion."

As noted above, there was no reason that a constitutional challenge to the process by which this Court selects potential jurors could not have been brought before the eve of trial. Her request for a continuance to try and prove the third prong should be denied, especially since Pugh has failed to satisfy the second prong of this test.

## CONCLUSION

For all the reasons stated herein, defendant Tia Deyon Pugh's motion to strike the venire, or in the alternative, continue the trial, [Doc. No. 101], should be denied.

Respectfully submitted this 16th day of May 2021.

SEAN P. COSTELLO
UNITED STATES ATTORNEY
by:

By: */s/Christopher J. Bodnar*
Christopher J. Bodnar
Assistant United States Attorney
63 South Royal Street, Suite 600
Mobile, Alabama 36602
(251) 441–5845

By: */s/Justin D. Kopf*
Justin D. Kopf
Assistant United States Attorney
63 South Royal Street, Suite 600
Mobile, Alabama 36602
(251) 441–5845