IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | Criminal No. 20-cr-0073-TFM |
| v. | * | |
| | * | |
| TIA DEYON PUGH | * | |
| | * | |
| | * | |

## UNITED STATES' OBJECTION TO
## DRAFT PRESENTENCE INVESTIGATION REPORT

Comes now the United States, by and through Sean P. Costello, the United States Attorney for the Southern District of Alabama, and files this objection to the draft presentence investigation report ("PSR") prepared by the Probation Office in the above-styled case. [Doc. No. 130] The Probation Office concluded in the draft PSR that there is no applicable offense level under the Federal Sentencing Guidelines (the "Guidelines") because the Guidelines do not provide specific guidance and, alternatively, there is no sufficiently analogous guidelines section to apply in this case. The United States respectfully objects to this conclusion. U.S.S.G. § 2A2.4 establishes sentencing guidance for defendants convicted of offenses involving obstructing or impeding law enforcement. For the reasons set out below, this guideline section is both sufficiently analogous to Pugh's offense to apply it in this case, and it also is the most analogous guidelines section. Accordingly, this Court should apply U.S.S.G. § 2A2.4 and arrive at a Total Offense Level of 13 when calculating Pugh's guidelines range.

### RELEVANT PROCEDURAL HISTORY

On May 19, 2021, following a three-day trial, a jury unanimously convicted Pugh of obstructing law enforcement during the course of a civil disorder that affected interstate commerce, in violation of 18 U.S.C. § 231(a)(3). [Doc. No. 116] Pugh's sentencing hearing is set for August 19, 2021. [Doc. No. 117] In advance of this hearing, a draft PSR has been submitted by the Probation Office recommending that this Court sentence Pugh using only the considerations set out in 18 U.S.C. § 3553(a). [Doc. No. 130]

1

Prior to filing the draft PSR, the probation officer consulted with both parties regarding the application of the Guidelines to convictions under 18 U.S.C. § 231(a)(3). Although the Guidelines do not explicitly address § 231(a)(3), the United States asserted that U.S.S.G. § 2A2.4 should apply here because this guidelines section addresses an analogous set of obstruction offenses. In contrast, Pugh claimed there was no sufficiently analogous guideline section and that the Court should rely exclusively on the sentencing considerations in 18 U.S.C. § 3553(a) without regard to the Guidelines. Ultimately, the Probation Office agreed with Pugh and recommended this Court only apply the § 3553(a) factors to arrive at Pugh's sentence. [Doc. No. 130, pp. 6, 11]

## STANDARD OF REVIEW

The Guidelines are intended to "'provide uniformity, predictability, and a degree of detachment lacking'" in earlier iterations of the federal sentencing regime. *United States v. Bryant*, 996 F.3d 1243, 1257 (11th Cir. 2021) (quoting *Koon v. United States*, 518 U.S. 81, 113 (1996)). To that end, the Guidelines provide advisory sentencing guidance on a vast range of federal offenses. If there is no guideline section that expressly addresses a particular felony offense, the Guidelines recommend that courts first "apply the most analogous offense guideline" and, alternatively, "[i]f there is not a sufficiently analogous guideline, the provisions of 18 U.S.C. § 3553 shall control, except that any guidelines and policy statements that can be applied meaningfully in the absence of a Chapter Two offense guideline shall remain applicable." U.S.S.G. § 2X5.1.

This analysis distills to three elements: (1) whether there is a guidelines section that "expressly" addresses the offense of conviction; (2) if no such guideline section exists, then whether one or more guidelines sections are "sufficiently analogous" to the offense of conviction; and (3) if there are multiple sufficiently analogous guidelines sections, then the district court must determine which section is the "most analogous offense guideline." *Id.* Here, the parties agree that there is no express guideline section for convictions under 18 U.S.C. § 231(a)(3). Accordingly, the analysis below focuses on whether there are sufficiently analogous sections, and if so, which is most analogous.

## ANALYSIS

As set out below, the Guidelines are intended to be encompassing. They strive to encapsulate all federal criminal conduct and provide standards for district court to consider at sentencing. In that vein, the Guidelines serve the Sentencing Commission's role "to bring certainty and uniformity to sentencing." *Bryant*, 996 F.3d at 1257. Although the Guidelines are advisory, they "should be the starting point and the initial benchmark at sentencing." *Gall v. United States*, 552 U.S. 38, 49 (2007). For that reason, the Supreme Court has explained that sentencing courts "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Id.* Thus, the Guidelines are intended to provide non-binding guidance to courts in nearly all federal criminal cases.

This Court should be particularly reluctant to conclude that 18 U.S.C. § 231(a)(3), a longstanding federal statute, is so novel that it lacks *any* comparison in the Guidelines. Instead, the Court should draw the practical and reasonable conclusion that U.S.S.G. § 2A2.4, which addresses obstructions or impediments to law enforcement, applies to Pugh's case.

### A. The Sentencing Commission Intends for the Guidelines to Encompass Virtually all Federal Offenses.

To begin with an overview, both the Sentencing Commission generally and the Guidelines specifically serve the purpose of bringing greater consistency in sentencing determinations. In that vein, the Guidelines sweep broadly to cover nearly all federal criminal offenses.

#### (1) The Guidelines' Role in Sentencing.

As the introduction to the Guidelines explain, the Sentencing Commission's congressionally delegated role is to create "detailed guidelines" that provide sentencing ranges for federal criminal offenses. Commenting on this mission, the Supreme Court has observed that the Sentencing Commission and district courts both play a role in assessing and applying the sentencing objectives set out in 18 U.S.C. § 3553(a). *See Rita v. United States*, 551 U.S. 338, 348 (2007).

While the Guidelines are no longer mandatory, the Supreme Court has made clear that the expectation is for federal sentencing to be done in tandem — the Sentencing Commission promulgates

3

various guideline sections, and the district court takes these into account when fashioning a specific sentence. *See United States v. Booker*, 543 U.S. 220, 264 (2005) ("The district courts, while not bound to apply the Guidelines, must . . . take them into account when sentencing."); *Gall*, 552 U.S. at 49 ("As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark.") For these reasons, the district court must consider the properly calculated guidelines range when determining the appropriate sentencing in a particular case. *See Rita*, 551 U.S. at 351.

The first step in calculating a defendant's advisory guidelines range is to determine which guidelines section applies to the offense of conviction. The Statutory Index to the Guidelines, *i.e.,* Appendix A, identifies the applicable guideline section or sections for many federal criminal offenses. However, the Statutory Index is not all-inclusive, and some federal criminal statutes are not expressly included. Relevant here, the Statutory Index does not reference a specific guidelines section for convictions under 18 U.S.C. § 231(a)(3). The Guidelines account for this nuance, though, and directs a district court to fill the gaps when the Statutory Index does not provide an answer. Applicable here, the Sentencing Commission included the following catchall provision:

> If the offense is a felony for which no guideline expressly has been promulgated, apply the most analogous offense guideline. If there is not a sufficiently analogous guideline, the provisions of 18 U.S.C. § 3553 shall control, except that any guidelines and policy statements that can be applied meaningfully in the absence of a Chapter Two offense guideline shall remain applicable.

U.S.S.G. § 2X5.1. At every turn, the Sentencing Commission evinces a clear preference — that the Guidelines should apply to practically every criminal offense. The first sentence begins with a presumption, specifically that there will be *multiple* analogous offense guidelines and that a sentencing court should apply the *most* analogous one. Although the second sentence then provides an alternative catchall for offenses that may be so novel that there is no analogous guideline section, it *still* directs sentencing courts to apply provisions in the Guidelines that courts may meaningfully apply. Moreover, this textual inquiry is consistent with the Supreme Court's observations on the role of the

4

Guidelines, namely that they provide a "starting point and the initial benchmark" at sentencing. *Gall*, 552 U.S. at 49. Finally, this assessment also is consistent with the purpose of an advisory Guidelines regime. District courts must assess the sentencing factors in § 3553(a) in every case, but the Guidelines assist district courts in that inquiry. The Sentencing Commission's statutory directive to provide detailed Guidelines, coupled with the expansive nature of the Guidelines, demonstrates that district courts should be left to apply 18 U.S.C. § 3553(a) without the benefit of *any* advisory guideline section in only the rarest of cases.

In sum, the Sentencing Commission clearly envisioned in U.S.S.G. § 2X5.1 that there would be at least one, if not multiple, guideline sections that could apply to a federal criminal offense the statute for which is not listed in the Statutory Index. It is *only if* the district court finds that there is "not a sufficiently analogous guideline," that the district court is directed to depart from the standard tandem sentencing procedure created by Congress and endorsed by the Supreme Court.

**(2)    Federal Criminal Statutes for Which There Are No Sufficiently Analogous Guidelines Are Extremely Rare.**

The Probation Office's recommendation to this Court, which is supported by Pugh, is that there is no sufficiently analogous guideline section for convictions under Section 231(a)(3). This is an extreme recommendation. Finding a federal criminal statute that a court has determined to have *no* sufficiently analogous guidelines section is the equivalent of searching for a needle in an entire hayfield. There are a few needles in there, but they are very few and far between. Examples of such rare needles include certain state felony offenses that occur in Indian Country. *See United States v. Clark*, 981 F.3d 1154 (10th Cir. 2020) (child neglect in Indian Country); *United States v. DeMarrias*, 833 F. App'x 30 (8th Cir. 2020) (unpublished) (child abuse in Indian Country).

In *Clark*, a child living on Cherokee Nation land injured her leg playing in a creek. The injured child was brought to Clark's house where she lay for several days in obvious distress before Clark sought medical attention. By the time medical assistance arrived, the injured child had passed away because of an infection that developed from her leg injury. *Id.* at 1157–59.

Following Clark's plea of guilty to child neglect in Indian Country, in violation of 18 U.S.C. §§ 1151, 1153 and OKLA. STAT. ANN. Tit. 21 § 843.5(c), the Probation Office recommended the district court find that there is no sufficiently analogous guidelines section to this offense. *Id.* at 1159. Clark objected and argued that U.S.S.G. § 2A2.3, which covers assault, was a sufficiently analogous guideline section. *Id.* Clark's objection was opposed by the United States. *Id.* at 1160. At the conclusion of the three-day sentencing hearing, the district court found that there was no sufficiently analogous guidelines section, and thus, sentenced Clark based only on the considerations in 18 U.S.C. § 3553(a). In support of this finding, the district court explained that after applying an elements-based analysis,[1] neither of the guideline sections for assault or involuntary manslaughter were sufficiently analogous, because Clark's conviction was for "negligently omitting to provide her child with proper care," and thus, "it [was] a crime of omission, and not commission." *Id.*, at 1160–61.

On appeal, the Tenth Circuit explained that under the Major Crimes Act, Clark's conviction was governed under Oklahoma state law since "federal law does not define or directly punish 'felony child abuse or neglect.'" *Id.* at 1163. In assessing whether the elements of the Oklahoma state statute were sufficiently analogous to assault under 18 U.S.C. § 113(a)(6), the Tenth Circuit determined: "Although a sufficiently analogous offense will necessarily not have the same elements as the offense of conviction, we conclude that there must be a greater degree of similarity than exists between the offense of child neglect under Oklahoma law and the federal offense of assault." *Id.* at 1166. Accordingly, the district court's finding that there was no sufficiently analogous guideline section for child neglect in Indian Country convictions was affirmed. *Id.* at 1167.

Similarly, the Eighth Circuit affirmed a sentence where the district court found there is no sufficiently analogous guideline section for felony child abuse in Indian Country, in violation of 18 U.S.C. § 1153 and S.D. CODIFIED LAWS §§ 26-8A-2 and 26-10-1. *See DeMarrias*, 833 F. App'x at 33.

---

[1] The "elements-based" analysis for determining whether a guidelines section is sufficiently analogous will be discussed in a subsequent section of this brief.

Finally, another rare needle is a conviction for conspiracy to communicate a false distress signal to the U.S. Coast Guard, in violation of 18 U.S.C. § 371 and 14 U.S.C. § 88(c). *See United States v. Deffenbaugh*, 709 F.3d 266 (4th Cir. 2013).

In *Deffenbaugh*, the defendant concocted a plan with his girlfriend to fake his death by falling off a boat in Chesapeake Bay to avoid a state probation revocation hearing. Deffenbaugh's brother, who was unaware of the plan, discovered him missing from the boat and alerted the Coast Guard. Following an exhaustive search of the bay, no body was found. This was because Deffenbaugh swam to shore, got in his girlfriend's waiting car, and began a new life in Texas. *Id.* at 268–71.

Following his conviction at trial, the Probation Office recommended the district court find that there was no sufficiently analogous guideline section for conspiring to make a false distress signal. *Id.* at 270. The United States objected, and argued that the guideline section for fraud, U.S.S.G. § 2B1.1, was sufficiently analogous, because the search for Deffenbaugh cost the Coast Guard over $200,000.00. *Id.* The district court concluded that the fraud guideline was not sufficiently analogous, but also noted that it took the fraud guideline section guidelines "into consideration," along with the factors in 18 U.S.C. § 3553(a), when it issued the 84-month sentence. *Id.* at 271.

On appeal, the Fourth Circuit held that it was not "plainly unreasonable" for the district court to find that the fraud guideline section was not sufficiently analogous to the offense of conspiring to falsely communicating a distress call to the Coast Guard. *Id.*, 274–75. However, the Fourth Circuit's reasoning was anchored to their analysis that although the district court did not adopt the fraud guidelines to establish an advisory guidelines range, the district court specifically stated that it "looked to" and "considered" the fraud guideline section in determining Deffenbaugh's sentence. *Id.* The Fourth Circuit does not address whether it would have been plainly unreasonable for the district court to have fashioned a sentencing only considering the Section 3553(a) factors.

7

Put simply, this Court should conclude it is only in the rarest of situations that the Guidelines do not cover a federal criminal conviction.[2] These cases illustrate the sorts of extremely rare circumstances that pose close questions under the Guidelines. Fortunately, as set out below, 18 U.S.C. § 231(a)(3) is not novel statute. Rather, it falls neatly within a broader range of federal criminal conduct — namely, obstruction of law enforcement — that the Guidelines already expressly address.

### (3) Finding that There is No Sufficiently Analogous Guideline Section for Convictions Under 18 U.S.C. § 231(a)(3) Could Lead to Widely Disparate Sentences for the Same Offense.

As discussed above, this Court's endorsement of the draft PSR's approach would completely carve out convictions under 18 U.S.C. § 231(a)(3) from the purview of the Sentencing Commission. By untethering § 231(a)(3) convictions from *any* guideline section, there is a much greater chance of widespread sentencing disparities for defendants convicted under this same statute, because there is no universal starting point for sentencing courts across the United States.

Of course, this Court must consider the sentencing factors in 18 U.S.C. § 3553(a) in *every* case, including this one. However, Pugh endorses the novel approach that this Court should consider those factors in a manner entirely detached from the Guidelines. In other words, Pugh would have this Court conclude that obstructing law enforcement during a civil disorder was so unforeseeable to the Sentencing Commission that it does not fall within the expansive reach of the first sentence in § 2X5.1. This approach would risk unwarranted sentencing disparities and would inject more confusion and uncertainty into sentencing. This approach would also deprive this Court of the initial benchmark that is present in virtually all other federal criminal sentencing hearings. For these reasons, and those set out in the sections below, this Court should reject the conclusion in the draft PSR that there is no sufficiently analogous guideline section for convictions under 18 U.S.C. § 231(a)(3).

---

[2] Contempt of court convictions should not be considered in this same category. There is a guidelines section specifically promulgated for contempt — U.S.S.G. § 2J1.1. However, in this guideline section, the Commission expressly directs the district court to sentence a defendant based solely on the factors in 18 U.S.C. § 3553(a). Thus, the tandem approach to sentencing is still in place when a defendant is sentenced for contempt of court.

### B. This Court Should Apply an Elements-Based Analysis and Conclude that U.S.S.G. § 2A2.4 is an Analogous Guidelines Provision.

No guideline section expressly addresses convictions under 18 U.S.C. § 231(a)(3). Accordingly, the Court should apply the "most analogous" guideline section. U.S.S.G. § 2X5.1. "Whether a guideline is or is not analogous to a defendant's criminal activity is a question of law." *United States v. Gabay*, 923 F.2d 1536, 1545 (11th Cir. 1991).

The Eleventh Circuit has yet to address how district courts in this Circuit should determine if a particular guideline section is "sufficiently analogous" to a defendant's offense of conviction. However, five circuits have addressed this issue, and they have come up with two different methodologies for conducting this analysis.

The Third, Fifth, Eighth, and Tenth Circuits have adopted an "elements-based" approach, under which the district court compares the elements of the offense of conviction with "the purportedly analogous guideline and the elements of the various federal offenses covered by this guideline." *United States v. Jackson*, 862 F.3d 365, 371–75 (3d Cir. 2017); *accord United States v. Rakes*, 510 F.3d 1280 (10th Cir. 2007); *United States v. Calbat*, 266 F.3d 358 (5th Cir. 2001); *United States v. Osborne*, 164 F.3d 434 (8th Cir. 1999). In this two-step inquiry, "a district court must first 'determine whether *any* guideline, and there can be more than one, is sufficiently analogous to the defendant's crime of conviction.'" *Clark*, 981 F.3d at 1162 (quoting *United States v. Nichols*, 169 F.3d 1255, 1270–71 (10th Cir. 1999) (original emphasis)). "If there are two or more [sufficiently] analogous guidelines, the district court must then 'determine which of the available guidelines is the *most* analogous.'" *Id.* (quoting *Nichols*, 169 F.3d at 1271 (original emphasis)).

As both the Third and Tenth Circuits have explained, when conducting an "elements-based" analysis, "a perfect match of elements is not necessary (or even expected). Instead, the proffered guideline need only be within the same proverbial 'ballpark' as the offense of conviction." *Clark*, 981 F.3d at 1163 (quoting *Jackson*, 862 F.3d at 376). Furthermore, these circuits have explained that "this

9

inquiry must be conducted in a flexible and open-ended fashion." *Clark*, 981 F.3d at 1163; *Jackson*, 862 F.3d at 375.

In contrast, the Ninth Circuit, while reasoning that selection of the appropriate guideline section is "primarily a statutory question," held that the district court may consider "the conduct charged in the indictment." *United States v. McEnry*, 659 F.3d 893, 899 (9th Cir. 2011). The United States advocated for this same "indictment-facts" approach in *Jackson*, but it was rejected by the Third Circuit in favor of the elements-based analysis. *See Jackson*, 862 F.3d at 372–73.

The United States urges this Court to apply the elements-based analysis. First, it is persuasive that this is the position of all but one of the circuits that have addressed this issue. Second, examining the elements of the offense, rather than facts charged in the indictment, avoids arbitrary sentencing disparities based on the wording of different indictments when 18 U.S.C. § 231(a)(3) is the common offense of conviction. Finally, an elements-based analysis provides uniformity in sentencing defendants for convictions of this offense.

### (1) U.S.S.G. § 2A2.4 is a Sufficiently Analogous Guideline Section.

Section U.S.S.G. § 2A2.4 — which is entitled "Obstructing or Impeding Officers" — is a sufficiently analogous guideline section to apply when a defendant, like Pugh, has been convicted of obstructing law enforcement during the course of a civil disorder, in violation of 18 U.S.C. § 231(a)(3).

The first step in the elements-based analysis is to examine the elements of the offense for which there is no expressly promulgated guidelines section — here, 18 U.S.C. § 231(a)(3). This Court instructed the jury during Pugh's trial that the elements of this offense were as follows:

(1) The defendant knowingly committed an act, or attempted to commit an act, with the intended purpose of obstructing, impeding, or interfering with one or more law enforcement officers;

(2) At the time of the defendant's actual or attempted act, the law enforcement officer or officers were engaged in the lawful performance of their official duties incident to and during a civil disorder . . ., and

10

  (3)  The civil disorder obstructed, delayed, or adversely affected interstate commerce or the movement of any article or commodity in interstate commerce, in any way or to any degree.

*See* [Doc. No. 102, p. 13] (United States' proposed final jury instructions, which were adopted by the Court).

The next step is to determine if there is a federal criminal statute for which a guideline section has been expressly promulgated whose elements are "sufficiently analogous" to the statute in question. There are.

Under 18 U.S.C. § 111(a)(1), it is a federal crime to "forcibly . . . impede[] . . . or interfere[] with any" federal law enforcement officer while that officer is "engaged in or on account of the performance of their official duties." *Id.* The Commission expressly promulgated U.S.S.G. § 2A2.4 to cover this offense. Furthermore, § 2A2.4 also applies to convictions under 18 U.S.C. §§ 1501 and 1502, which, respectively, makes it a federal crime to "willfully obstruct[]" a federal officer serving process or an extradition officer during the executions of their official duties.

As the Third and Tenth Circuits have explained, a perfect overlap of elements is not necessary, or even expected, for a district court to determine that a guideline section is "sufficiently analogous." *Clark*, 981 F.3d at 1163; *Jackson*, 862 F.3d at 376. Here, substantial overlap exists between the elements of 18 U.S.C. § 231(a)(3) and 18 U.S.C. §§ 111(a)(1), 1501, and 1502. At their core, these statutes criminalize intentional acts by a defendant to impede, obstruct, or interfere with law enforcement officers who are engaged in their official duties. The fact that Sections 111(a)(1), 1501, and 1502 are specific to federal law enforcement and Section 231(a)(3) is specific to acts occurring during a civil disorder is of no significant consequence here. These statutes simply criminalize obstruction in different situations. Clearly, the elements of all these statutes are within the same "proverbial ballpark." *Clark*, 981 F.3d at 1163; *Jackson*, 862 F.3d at 376.

The Sentencing Commission expressly promulgated U.S.S.G. § 2A2.4 to cover federal criminal obstruction offenses. For the reasons set out above, this guideline section is "sufficiently analogous" for use when sentencing a defendant under 18 U.S.C. § 231(a)(3). The question then remains, is U.S.S.G. § 2A2.4 the "most analogous" guidelines section?

### (2) U.S.S.G. § 2A2.4 is the Most Analogous Guideline Section.

If more than one guideline section is "sufficiently analogous," then the district court must decide which guideline section is "most analogous." *Clark*, 981 F.3d at 1162. Pugh has failed to identify any sufficiently analogous guideline sections, much less assert that any guideline section is more analogous than U.S.S.G. § 2A2.4. At least one district court recently has found § 2A2.4 to be the most analogous guideline section for convictions under 18 U.S.C. § 231(a)(3).

On May 30, 2020, protests in the wake of George Floyd's death occurred in Fargo, North Dakota. As was the case the following day in Mobile, Alabama, a portion of the Fargo protest turned into a civil disorder, which led to the U.S. Post Office ceasing operations for 24-hours and law enforcement having to close an interstate bridge between North Dakota and Minnesota. While officers were dealing with this civil disorder, Jonathan Montanez jumped on top of an occupied police vehicle and slammed his fists against it causing damage, Errick Toa kicked out the windshield of an occupied police vehicle, and Abdimanan Habib threw rocks at officers and tried to light a bottle and throw it at them. Montanez, Toa, and Habib all pleaded guilty to violating 18 U.S.C. § 231(a)(3). In each of their plea agreements, the parties agreed that "the base offense level under the Sentencing Guidelines for Defendant's conduct is 6 (U.S.S.G. § 2B1.1(a)(2))." *See* Attachment A. Despite this plea agreement language, the Probation Office recommended the district court apply U.S.S.G. § 2A2.4 as the most analogous guidelines section.

During Montanez's sentencing hearing, he objected to the PSR on the basis that "Section 231(a)(3) is a property offense," and thus, the most analogous guideline section was U.S.S.G. § 2B1.1. *See* Attachment B, pp. 8–10. In response, the United States noted that it included the reference to

U.S.S.G. § 2B1.1 in Montanez's plea agreement only because this guideline section was suggested on the Sentencing Commission's website. *Id.*, pp. 10–11. Thereafter, the district court sought comment from a probation officer who explained that Habib had already been sentenced using U.S.S.G. § 2A2.4 as the applicable guideline section. *Id.*, pp. 13–14. Ultimately, the district court found U.S.S.G. § 2A2.4 to be the most analogous section and explained:

> [T]he facts in the [PSR] . . . indicate that the defendant was observed as one of many protesters who jumped on top of and repeatedly slammed his fists against an occupied police vehicle and this did cause damage. Video footage also showed him kicking the bumper of the vehicle as well.
>
> By a preponderance of the evidence, the Court finds that the most analogous guideline to the offense conduct in this matter is obstruction or impeding officers under 2A2.4. The base offense level will be 10 and we'll proceed accordingly.

*Id.*, pp. 15–16. Ultimately, Montanez was sentenced to 24 months, and Toa and Habib were each sentenced to time served.[3] *See* Attachment C.

This Court should follow the lead of the district court in North Dakota and find that U.S.S.G. § 2A2.4 is the most analogous guidelines section to apply when a defendant is convicted of an offense under 18 U.S.C. § 231(a)(3).[4]

\*           \*           \*

For all of the reasons set out in Section B of this brief, U.S.S.G. § 2A2.4 is both "sufficiently analogous" and the "most analogous" section for convictions under 18 U.S.C. § 231(a)(3). Accordingly, this Court should apply U.S.S.G. § 2A2.4 when calculating Pugh's guidelines range.

---

[3] It is unclear how much time Toa and Habib had served before they were sentenced in this case.

[4] While the presence of an officer in the vehicle was not disputed by Montanez, and it was highly disputed by Pugh during her trial, this difference is of no consequence here. Montanez's attorney expressly argued that the offense was against the vehicle, and not the officers inside. Attachment B, p. 12. Thus, the presence of an officer was irrelevant. Furthermore, the district court specifically noted that the offense conduct was "obstructing or impeding officers," not assault of an officer. *Id.*, p. 16.

13

### C.   Applying U.S.S.G. § 2A2.4 to the Facts of Pugh's Case.

Pursuant to U.S.S.G. § 2A2.4(a), Pugh's Base Offense Level is 10. This guideline section also has a three-level enhancement if "a dangerous weapon . . . was possessed and its use was threatened" U.S.S.G. § 2A2.4(b)(1).  The Commission defines "dangerous weapon" in relevant part as "an instrument capable of inflicting death or serious bodily injury." U.S.S.G. § 1B1.1, app. n. 1(E). As this Court and the jury saw at trial, Pugh used a metal baseball bat she brought from home to smash the window of a police vehicle.  Thus, she possessed, and not only threatened, but *used* a dangerous weapon in the commission of her offense.  Accordingly, she should also receive the three-point enhancement in § 2A2.4(b)(1), which leads to a Total Offense Level of 13.

An Offense Level of 13 coupled with Criminal History Category I equates to an advisory guidelines range of 12–18 months for Pugh.  For the reasons stated herein, the United States contends that this is the procedurally correct guidelines range for Pugh.[5]

### CONCLUSION

For the reasons stated herein, the properly calculated Total Offense Level for Pugh is 13, and her advisory guidelines range should be 12–18 months.

Respectfully submitted this 5th day of August 2021.

SEAN P. COSTELLO
UNITED STATES ATTORNEY
by:

By: /s/ *Christopher J. Bodnar*
Christopher J. Bodnar
Assistant United States Attorney
63 South Royal Street, Suite 600
Mobile, Alabama 36602
(251) 441–5845

By: /s/ *Justin D. Kopf*
Justin D. Kopf
Assistant United States Attorney
63 South Royal Street, Suite 600
Mobile, Alabama 36602
(251) 441-5845

---

[5] Since the Probation Office determined there was no applicable guideline section for a conviction under 18 U.S.C. § 231(a)(1), it did not give a recommendation on whether Pugh should receive any reduction for acceptance of responsibility. [Doc. No. 130, p. 6] If such recommendation is made, the United States intends to object to Pugh receiving credit for acceptance of responsibility.

14