**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**

```
- - - - - - - - - - - - - - -
                              )
United States of America,     )
                              )
            Plaintiff,        )
                              )
        vs.                   )    FILE NO. 3:20-cr-170
                              )
Jonathan Montanez,            )
                              )
            Defendant.        )
                              )
- - - - - - - - - - - - - - -
```

**T R A N S C R I P T**

**O F**

**P R O C E E D I N G S**

**Sentencing - April 2, 2021**

**Pages 1-36**

HELD AT: QUENTIN BURDICK UNITED STATES COURTHOUSE
         655 FIRST AVENUE NORTH
         FARGO, NORTH DAKOTA  58102

BEFORE:  THE HONORABLE PETER D. WELTE

COURT REPORTER:  KELLY A. KROKE

1                      **A P P E A R A N C E S**

2   **MR. RICHARD M. LEE              COUNSEL FOR PLAINTIFF;**
    Office of US Attorney
3   655 1st Avenue North, Ste. 250
    Fargo, ND 58102
4

5   **MR. CHRISTOPHER J. LANCASTER      COUNSEL FOR DEFENDANT;**
    Office of Federal Public Defender
6   112 Roberts Street North, Ste. 200
    Fargo, ND  58102
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    P R O C E E D I N G S

 2              (April 2, 2021, the following proceedings

 3    commenced at 9:10 a.m.)

 4              THE COURT:  Ten minutes after 9:00 on

 5    Friday, April 2nd.  We're on the record and the case

 6    before us is United States versus Jonathan Montanez.

 7    Mr. Montanez is present.

 8              Good morning, sir.

 9              THE DEFENDANT:  Good morning.

10              THE COURT:  Mr. Montanez is represented by

11    Attorney Chris Lancaster.  The United States is

12    represented by Assistant United States Attorney Richard

13    Lee.  And we're here for a sentencing on the Indictment

14    to which the defendant plead guilty, the Indictment

15    being for civil disorder on or about May 30th of 2020.

16              We have a Plea Agreement in this matter

17    wherein the defendant plead voluntarily guilty to Count

18    One.  This was a nonbinding Plea Agreement and the Plea

19    Agreement calls for the United States to recommend a

20    sentence within the guideline range and recommend

21    restitution in exchange for the defendant's guilty plea.

22    That was accomplished quite some time ago.

23              Mr. Montanez, if you will please remain

24    seated, I see that you're restrained.  I don't want you

25    to trip or anything but remain seated, raise your right
```

1    hand and the clerk of court will administer an oath.

2              (Oath administered.)

3              THE COURT:  Mr. Montanez, how are you

4    feeling this morning?

5              THE DEFENDANT:  I'm feeling all right, Your

6    Honor.  How about yourself?

7              THE COURT:  Just fine, thank you.  You've

8    been in custody for some time now, roughly six months,

9    and have you had sufficient opportunity to review this

10   matter with Mr. Lancaster?

11             THE DEFENDANT:  Yes, sir.

12             THE COURT:  I don't believe -- I've reviewed

13   this file pretty thoroughly.  I don't believe you have

14   any issues with English as a spoken language.  You're

15   understanding what I'm saying?

16             THE DEFENDANT:  Yes, sir.

17             THE COURT:  And you are satisfied with the

18   representation that you've received in this matter?

19             THE DEFENDANT:  Yes, Your Honor.

20             THE COURT:  Okay.  Have you had an

21   opportunity -- by the way, I should ask you you're not

22   under the influence of any alcohol or drugs, are you?

23             THE DEFENDANT:  No, Your Honor.

24             THE COURT:  Are you under the -- are you

25   using any prescription medications of any kind?

```
 1                    THE DEFENDANT:  No, Your Honor.
 2                    THE COURT:  Okay.  Have you had an
 3   opportunity, Mr. Montanez, to review the Presentence
 4   Investigation Report with your attorney?
 5                    THE DEFENDANT:  Yes, Your Honor.
 6                    THE COURT:  Okay.  Mr. Lancaster, do you
 7   have anybody in the courtroom who is intending or
 8   desiring to make a statement besides your client?
 9                    MR. LANCASTER:  No, Your Honor.
10                    THE COURT:  Thank you.  Mr. Lee, do you have
11   any victims that are intending to make presentations?
12                    MR. LEE:  No, Your Honor.
13                    THE COURT:  All right.  Thank you.
14                    Well, Mr. Montanez, I've reviewed the
15   Presentence Investigation Report.  You've indicated that
16   you understand it.  Other than questions or objections
17   that will be submitted by your counsel, do you have any
18   questions for me about the Presentence Investigation
19   Report?
20                    THE DEFENDANT:  No, Your Honor.
21                    THE COURT:  Okay.  I did receive a letter
22   this morning, Mr. Montanez, and I wanted you to know
23   that I did receive it.  It was hand delivered to me by
24   the clerk of court roughly five minutes before the
25   hearing.  I'm going to take a minute to read this letter
```

 1   again.  I've read it once but I want to read it again

 2   and digest it.

 3              I also wanted to bring to your attention

 4   that on that video screen in front of your attorney is

 5   Stacey Meidinger.  She is a probation officer with the

 6   United States Department of Probation.  You likely

 7   recall interviewing with her?

 8              THE DEFENDANT:  She was the one that did the

 9   PSI report, correct?

10              THE COURT:  Correct.

11              THE DEFENDANT:  Yup.

12              THE COURT:  So she's present in the

13   courtroom as well.

14              MR. LANCASTER:  Your Honor?

15              THE COURT:  Yes, sir.

16              MR. LANCASTER:  If I may, I want to express

17   my apologies.  The letter you're referencing under

18   normal circumstances our office would have filed well in

19   advance of the hearing.  When I was reviewing the

20   materials last night for -- in preparation for today I

21   noted that it didn't appear that it had been filed --

22   that it had been filed and some miscommunication in my

23   office.  So I apologize that it was filed this

24   morning -- or I guess we will file it after the hearing.

25   I think that's what the procedure would be.

1          THE COURT:  You know, Mr. Lancaster, yes,

2     thank you.  If you would file it after the hearing, that

3     would be appropriate.  The United States has had an

4     opportunity to review the letter or at least has it?

5          MR. LEE:  Correct, Your Honor.

6          THE COURT:  Thank you.  And although the

7     Court certainly appreciates your apology it's not

8     necessary.  These things happen but your unnecessary

9     apology is certainly accepted and thank you.

10          Mr. Lee, objections to the Presentence

11     Investigation Report?

12          MR. LEE:  Your Honor, the United States

13     plans to make a recommendation in accordance with the

14     Plea Agreement.  I'll note that the Plea Agreement

15     indicates that the correct section under the sentencing

16     guidelines is 2B1.1.  The Presentence Investigation

17     Report uses a different section.  United States will be

18     recommending a sentence pursuant to 2B1.1, Your Honor.

19          THE COURT:  Thank you, Mr. Lee.  Mr. Lee,

20     you do recall the change of plea hearing?

21          MR. LEE:  I think you may be referring to

22     Mr. Toa?

23          THE COURT:  Well, actually I was referring

24     to the change of plea hearing in this case on

25     December 3rd but it's entirely possible that it was a

1    different Assistant United States Attorney.  I do beg

2    your pardon, Mr. Lee.  It was Jake Rodenbiker at the

3    change of plea hearing in this matter.

4              MR. LEE:  Okay.

5              THE COURT:  Thank you.  I beg your pardon,

6    yes.  I do note your recommendation.  Is your

7    recommendation stylized as a formal objection to the

8    computation in the Presentence Investigation Report?

9              MR. LEE:  Yes, Your Honor.

10             THE COURT:  Okay.  Mr. Lancaster?

11             MR. LANCASTER:  Is the Court referencing --

12             THE COURT:  Any objections to the -- yeah.

13             MR. LANCASTER:  I believe the Court has our

14   objection which is noted in the PSR at the addendum.

15   I'll address that very briefly.  We filed a Sentencing

16   Memorandum in the case and, Your Honor, I don't want to

17   belabor the points that were in there because it was

18   rather lengthy.  A few things that I would just like to

19   say to the Court.

20             It's our position that the offense level

21   should be six, not 10 before acceptance of

22   responsibility so the total offense level we believe

23   should be four, not eight.  The applicable section that

24   applies from the guidelines it's our position is 2B1.1,

25   not 2A2.4.  Again the reasons for that are set forth in

1   the memorandum.

2             As we see it Section 231(a)(3) is a property

3   offense.  It's not an assault situation.  And that's

4   because it talks about obstruction, impeding, and

5   interfering, all of which any one of those means -- and

6   if we sort of analyze that from a Johnson case

7   perspective, any one of those can be accomplished

8   without any form of assaultive conduct.  And in this

9   case there was no assault.

10            What ended up happening -- and it's clear

11  from the video that Mr. Montanez, though there's no

12  excuse for it, was pounding on a vehicle, not on a

13  person.  There was no rock throwing.  There was no --

14  any type of conduct like that.

15            And then there is one part of the sentencing

16  memo I want to particularly highlight and that has --

17  it's that basically the guidelines begin with an

18  ambiguity.  It directs a person in this case with regard

19  to the statute to 2X5.1 which requires the application

20  of what would otherwise be the most analogous section.

21  And here what we're doing is we're trying to figure out

22  what the most analogous section is.  And as I said we

23  believe it's 2B1.1.  But as I said that begins just with

24  an ambiguity when we're going to 2X1.5.  Well, here, and

25  as noted in the argument that we've put before the

1   Court, the rule of lenity applies and in such a

2   situation the rule -- the guideline application here

3   should not be construed against Mr. Montanez.  It should

4   be construed in his favor and as a result that would

5   require 2B1.1.

6           That's all I have to say on that point, Your

7   Honor.  Thank you.

8           MR. LEE:  Your Honor, can I point out as

9   well -- it may aid the Court, I don't know.  How -- so I

10   drafted this Plea Agreement.  I came up with 2B1.1 and

11   I'd just like to briefly explain how I came up with

12   2B1.1.

13           THE COURT:  Please do.

14           MR. LEE:  Thank you, Your Honor.  Whenever I

15   draft any Plea Agreement I start with the red book, the

16   United States Sentencing Commission Guidelines Manual.

17   My version is 2018 which I believe is the most

18   up-to-date version.  I go to Appendix A where I look for

19   the corresponding statute.

20           In this case the statute is 18, U.S.C.,

21   231(a)(3) and as the Court probably knows I'm sure there

22   is no corresponding section in Appendix A, which is why

23   I believe the probation office did what they did.

24   However, the United States Sentencing Commission also

25   has a website, which is sentencing.us, and when you go

1    to that website it prompts you to put in a statute and

2    when you do put in a statute one of two things can

3    happen.  It can give you the corresponding section in

4    the guidelines book to use or it can say there is no

5    corresponding section.

6              When I prompted -- when I put in 18, U.S.C.,

7    231(a)(3), the website told me that the correct

8    corresponding guideline section is 2B1.1.  I just wanted

9    to let the Court know that that is how I came up with

10   2B1.1.  I used the Sentencing Guidelines website even

11   though it's not in Appendix A in the book.  On the

12   website though it did send me to 2B1.1, which is why

13   that's the statute I used when drafting this Plea

14   Agreement.

15             THE COURT:  You may remain seated, Mr. Lee,

16   as you address the Court but 18, U.S. Code, 231(a)(3) is

17   the statute that you entered, correct?

18             MR. LEE:  Correct.

19             THE COURT:  Does that contemplate -- the

20   conduct within the statute, does it contemplate that the

21   police vehicle was occupied?  There were two people

22   inside the vehicle?  Two officers?

23             MR. LEE:  I understand, yeah.  It does

24   complicate things.  There's no doubt that it can be

25   interpreted or it's ambiguous maybe is the better way to

1    describe it, yeah.  There's some ambiguity here.

2    There's no doubt.

3              THE COURT:  Mr. Lancaster, anything further

4    with regards to that objection, sir?

5              MR. LANCASTER:  Two things if I may, Your

6    Honor.  Based on the Court's question, first though

7    there may have been officers inside the vehicle, there

8    was no attempt to break the windows, to do anything like

9    that where there was some kind of direct action against

10   the officers themselves.  It was against the vehicle.

11   And I reviewed the video so if we're talking about pure

12   action that's what my response would be there.

13             Second, I mention the Johnson line of cases

14   and the reasoning there and it's mentioned somewhat in

15   the sentencing memo where we are looking at the language

16   of the statute and that -- and how the statute is

17   interpreted and the application of the guideline with

18   regard to the statute.

19             So those would be the two responses that I

20   would make to the Court to that question, Your Honor.

21   And there is one other thing.  To have all candor with

22   the Court, Mr. Lee -- and I do appreciate Mr. Lee, his

23   communications with me and his offering to the Court

24   when he used the website sentencing.com.  I've used that

25   as well.

```
 1              I can't cite that -- I don't believe Mr. Lee
 2   can cite that as precedential value but it is something
 3   that's commonly used by counsel as a resource, and it's
 4   a resource that does take into consideration the
 5   commentary from the guidelines commission.  That said,
 6   we have to have all candor with the Court and can't
 7   offer that as precedent.
 8              THE COURT:  Thank you, Mr. Lancaster.
 9   Ms. Meidinger, the Court would be very interested in any
10   additional comment that you would have, any additional
11   guidance you would have with regards to this.
12              MR. MEIDINGER:  Thank you, Your Honor.  In
13   making the decision to go with the guidelines that we
14   did, I will refer to United States v. Abdimanan Habib,
15   2X5.1 was used in that instance and accepted by the
16   Court with a base offense level of plus 10.  The
17   obstructing and impeding, you know, it's -- whether or
18   not, you know, the parties can agree whether or not it
19   was assaultive-type behavior, I mean, there were like I
20   said two occupants in the vehicle and that is what our
21   office has agreed to go with for these riots.  These
22   officers were there to maintain peace throughout the
23   protest and --
24              MR. LANCASTER:  (Indiscernible.)
25              MS. MEIDINGER:  Excuse me?
```

1          THE COURT:  No, that's okay.  Counsel, if

2    you do use -- if you do comment mute your mics.  Go

3    ahead.

4          MR. LANCASTER:  My apologies, Your Honor.

5          THE COURT:  Go ahead, Ms. Meidinger.

6          MR. MEIDINGER:  So I would just refer to the

7    guidelines and the Presentence Investigation Report in

8    paragraph 11 which outlines why we chose the guideline

9    we did.

10         THE COURT:  Thank you, Ms. Meidinger.

11         MR. MEIDINGER:  You're welcome.

12         MR. LANCASTER:  My apologies to both the

13   Court and Ms. Meidinger.

14         THE COURT:  Understood.  No problem.  Well,

15   counsel, here's the deal.  Whenever there's an objection

16   to the section that is used, the objection is to be

17   resolved by a preponderance of the evidence standard

18   according to the guidelines manual.  The violation of

19   18, U.S. Code, 231(a)(3) as set forth in the Presentence

20   Investigation Report is found in United States

21   Sentencing Guideline 2X1.5.

22         Now I understand that Mr. Lee did his due

23   diligence as did Mr. Lancaster.  Both parties used their

24   due diligence to come up with the guideline section that

25   they felt was appropriate.  2X1.5 is I guess by its

1    nature a little bit problematic because what it says is:

2    The guideline outlines the offense for a felony for

3    which no guideline expressly has been promulgated.  And

4    then there is to be an application of the most analogous

5    offense guideline.

6              In this particular case I do need to verify

7    from both parties that their objection is to the

8    application of the guideline as set forth in their

9    Sentencing Memorandums but that there is -- Mr. Lee, is

10   it accurate for the Court to say there is no other

11   objection to the facts in the Presentence Investigation

12   Report?

13             MR. LEE:  Correct.

14             THE COURT:  And is that accurate,

15   Mr. Lancaster?

16             MR. LANCASTER:  Yes, Your Honor.

17             THE COURT:  Thank you.  Well, if that's the

18   case then the facts in the Presentence Investigation

19   Report, particularly in paragraph 5 -- 4 and 5 indicate

20   that the defendant was observed as one of many

21   protesters who jumped on top of and repeatedly slammed

22   his fists against an occupied police vehicle and this

23   did cause damage.  Video footage also showed him kicking

24   the bumper of the vehicle as well.

25             By a preponderance of the evidence the Court

1  finds that the most analogous guideline to the offense

2  conduct in this matter is obstructing or impeding

3  officers under 2A2.4.  The base offense level will be a

4  10 and we'll proceed accordingly.

5           The Court having resolved the objection to

6  the -- by the United States and by the defense, we'll

7  move on to the offense level computation.  And I will

8  note both for the United States and the defense if you

9  are so inclined the Court will preserve your objection

10 even though the objection has been resolved for purposes

11 of this hearing.

12          Offense level computation begins on page 5.

13 Civil disorder, the base offense level is a 10 as

14 previously delineated by the Court.  There are no other

15 adjustments so the adjusted offense level is a 10.  The

16 defendant is receiving the benefit of demonstrating

17 acceptance of responsibility.  Accordingly the offense

18 level is decreased by two levels.  Total offense level

19 of eight, Criminal History VI in this matter.  The

20 defendant has 16 points.  In order to get to a Criminal

21 History VI, only 13 points are required.

22          Other than the previous objection as noted,

23 Mr. Lee, any objection to the offense level computation?

24          MR. LEE:  No, Your Honor.

25          THE COURT:  Thank you.  Other than noted and

```
 1   preserved, Mr. Lancaster, any other objection to the
 2   offense level computation?
 3                MR. LANCASTER:  There are no further
 4   objections beyond that which we've offered, Your Honor.
 5                THE COURT:  Thank you.  Mr. Lee, your
 6   recommendation.
 7                MR. LEE:  Pursuant to the Plea Agreement,
 8   the United States is recommending a sentence within the
 9   applicable guideline range.
10                THE COURT:  Thank you.  Mr. Lancaster?
11                MR. LANCASTER:  May I have a moment?
12                THE COURT:  Please do.
13                MR. LANCASTER:  Thank you.
14                (The defendant and his counsel conferring.)
15                THE COURT:  Let's just mute their mics,
16   Lori.
17                MR. LEE:  Your Honor, may I correct?
18   Pursuant to the Plea Agreement, Your Honor, with the
19   guideline section the United States is recommending a
20   sentence between the guideline range of six and 12
21   months, Your Honor.
22                THE COURT:  And please elaborate on the six
23   to 12-month recommendation.
24                MR. LEE:  Your Honor, the Plea Agreement
25   that the United States entered into with the defendant
```

1   contemplated that the section being 2B1.1 which would

2   have been a six with a two-point reduction for

3   acceptance of responsibility.  At a Criminal History

4   score of VI, that would be the guideline range of six to

5   12 months, Your Honor.

6           THE COURT:  Very good.  Thank you, Mr. Lee.

7   Just making sure that we develop a record for the

8   recommendations.

9           Mr. Lancaster?

10          MR. LANCASTER:  I apologize, I need to look

11  up one thing, Your Honor.

12          Your Honor, my recommendation to the Court

13  is a sentence of credit for time served.  I make this

14  recommendation for several reasons.  I stated some of

15  them when I offered my objection with regard to the

16  offense level calculation.  I do believe the rule of

17  lenity is something that still translates into what

18  ultimately should be considered for purposes of

19  sentencing and I won't belabor that point again.

20          I would talk about Jonathan just simply as a

21  person.  From the beginning, as I have represented

22  Jonathan, he's been about as straightforward of a client

23  as I've had and that's whether or not I've been talking

24  to him in person or talking to him by phone.  He was at

25  Cass County during the height here of the COVID

1   situation where there were repeated lockdowns as a

2   result and should I also say times when people were

3   becoming infected inside the jail itself.  Just as

4   everybody has had to put up with that while they've been

5   in custody, Jonathan has been placed in that position

6   and I do think the Court should take a look at that

7   situation in considering its sentence.

8          With regard to his criminal history, and the

9   Court did note that he has a criminal history as he

10  does, that criminal history's been influenced by a

11  difficult life while he's been young.  That has been

12  outlined in the PSR.  In addition he's been affected by

13  substance abuse which was also discussed during the

14  course of the interview and as outlined in the PSR.

15         But he's made strides in his life.  As

16  everybody comes before the Court, a person can be a

17  mixed bag and that's certainly what we have in the case

18  of Jonathan.  And he's made strides in trying to right

19  himself.  Particularly I would point to the fact that he

20  has worked very hard to maintain employment.  When you

21  take a look at his employment, he has tried to maintain

22  a consistent employment history.  At the time of his

23  arrest he was working for Crystal Sugar.  He had a good

24  job, and we were trying to get him out so he could go

25  and maintain that job.  The people he was working for

1  found him to be a very good employee that they wanted to

2  be able to keep on.

3          But here's the final thing that I want to

4  talk about.  I think it demonstrates where he is at with

5  regard to this offense, his acceptance of

6  responsibility, which I think is exceptional acceptance,

7  and that goes to the day of his arrest.  And I don't

8  think it's sufficiently outlined in the PSR.  He's been

9  detained as noted in the Presentence Report.  He was

10  notified by a friend that the FBI had been out to try to

11  find him.  Government agents had been out to try to find

12  him because there was a warrant.

13          Now they got his number, contacted him.

14  He's at work.  When they first call him up they followed

15  standard protocol and said to him that they wanted to be

16  able to talk with him and that kind of thing.  He asked:

17  Is there a warrant for me?  They said yes, and they

18  afforded him the opportunity to be able to come in on

19  that warrant.  Well, what Jonathan said was:  I got a

20  ride to work.  I was brought to work.  I don't have the

21  ability to get back.  And so what he did was he

22  literally clocked out and told them he would be waiting

23  at work.  He was arrested at work.  He could have tried

24  to flee.  He could have tried to do anything.  Instead

25  he was there available and taking responsibility from

1    the very first moment.

2              When he entered his plea of guilty, he did

3    the same thing before the Court.  I have found him to

4    be, as I said, exceptionally remorseful when it's come

5    to this.

6              If the Court reviews his statement, the one

7    aspect of it I found interesting and I commented to him

8    was sort of the formality of how he was talking.  And to

9    me what was interesting is the formality and how -- even

10   how it begins in his statement where he says:  Your

11   Honor, ladies and gentlemen of the Court, prosecutor

12   attorney, Fargo PD, the impacted victims, et cetera,

13   this is somebody who's not just trying to throw out some

14   words to make it sound good.  This is somebody who is

15   really trying to demonstrate respect and demonstrating

16   that what he did back in May was not a good thing and he

17   recognizes that.

18             With all of that, Your Honor, I believe that

19   a sentence of credit for time served dated from the time

20   he was arrested on September 30 is a sentence sufficient

21   but not greater than necessary in this case and I'd ask

22   the Court to adopt that.  Thank you.

23             THE COURT:  Thank you, Mr. Lancaster.

24             Mr. Montanez, this would be the time in the

25   hearing that you would be permitted to address the Court

1   with what is formally called an allocution.  An

2   allocution is in general a statement to the Court.  My

3   rules are that you can address anything that you want to

4   during your allocution and you can say anything you want

5   to the Court.  Makes it a lot simpler for you and also I

6   think that that promotes candor and clarity.  So please

7   do proceed.  I beg your pardon, Mr. Montanez, if you

8   don't wish to you don't have to, okay?

9          THE DEFENDANT:  Okay.  Well, Your Honor, I

10  just want to state that I do want to apologize to

11  everybody that I impacted.  My trial and my offense was

12  deemed newsworthy and I also apologize to my families

13  and friends for the embarrassment that I could have

14  brought upon them to y'all in the Court and to anybody I

15  impacted.

16          I just want to say I'm sorry.  My intentions

17  were good to go there and to -- were all good intentions

18  and I made a mistake.  I made a mistake and I damaged

19  people's property that wasn't mine and I affected

20  everybody that was around me and including people that

21  weren't.  And I sincerely want to apologize and I accept

22  responsibility for everything I've done and with that

23  I'm okay, Your Honor.  Thank you.

24          THE COURT:  Thank you.

25          MR. LANCASTER:  Your Honor?

```
 1                    THE COURT:  Sure.

 2                    MR. LANCASTER:  My apologies.  And I want to

 3       tell Mr. Lee that I appreciate this.  He brought it to

 4       my attention.  I misspoke and actually misspoke.  It is

 5       something the Court should know and that is it wasn't

 6       the FBI that called Mr. Montanez.  He called the FBI.

 7       And I think that that's extremely important.  Thank you.

 8                    THE COURT:  Thank you.  Mr. Montanez, do you

 9       have anything further?

10                    THE DEFENDANT:  No, Your Honor.

11                    THE COURT:  Mr. Lancaster, do you have the

12       Presentence Investigation Report in front of you?

13                    MR. LANCASTER:  Yes, Your Honor.

14                    THE COURT:  Would you please refer to

15       paragraph 48.

16                    MR. LANCASTER:  Yes, Your Honor.

17                    THE COURT:  Paragraph 48 indicates that your

18       client was charged for domestic assault within 10 years

19       of the first of two or more previous convictions.  That

20       was charged out in Clay County.  His date of arrest

21       there was July 24th of 2020.  So that was subsequent to

22       the actions in this particular case but I would note for

23       the record that the Indictment in this case was filed in

24       September.

25                    My point is this:  He was placed on pretrial
```

1   supervision on July 24th, did not show up for a

2   scheduled hearing on September 17th of 2020.  The

3   records indicate that he was apprehended on the federal

4   warrant for this offense on September 30th of 2020.

5          Wouldn't that be inconsistent with the

6   premise that he is taking responsibility from the very

7   first moment?

8          MR. LANCASTER:  Your Honor, I don't have it

9   in front of me.  I've spoken to his lawyer about that.

10  That aspect -- whatever the issue was was cleared up.

11  The reason that he has the warrant -- because I believe

12  there was another date that came up that was scheduled.

13  But he wasn't being taken into custody on that or -- I

14  spoke to his lawyer and that had been cleared up.  So --

15  but beyond that I can't really offer anything to the

16  Court.

17         THE COURT:  I note that it looks like

18  Mr. Montanez maybe wanted to speak to you about that.

19  Did you want to speak to your lawyer about that?

20         THE DEFENDANT:  Or to you, Your Honor.  The

21  reason I missed my court date September 17th was because

22  I was exposed to corona.  I had talked to my state

23  lawyer.  My state lawyer -- the judge granted me three

24  weeks of quarantine.  He rescheduled a new court date.

25  And the reason I got a warrant for my arrest is not for

1   missing September 17th, Your Honor.  It's because when I

2   wasn't able to get out during my detention hearing I

3   missed court for being under United States Marshal hold

4   and that's when my warrant came out.  The reason I

5   didn't go to court that day is because the judge -- the

6   Minnesota judge said that he wanted me to quarantine for

7   three weeks, Your Honor, and I didn't -- there was no

8   warrant issued out for that.  It was issued afterwards

9   for missing it, for being under y'all's custody.

10              THE COURT:  Thank you.

11              MR. LANCASTER:  And, Your Honor, I just

12   don't -- I don't have the note that I had taken where I

13   had talked to his lawyer so I did not remember.  I just

14   remembered that that situation the Court is referring to

15   about September had been resolved.

16              THE COURT:  And thank you, Mr. Lancaster.  I

17   certainly will take Mr. Montanez at his word with his

18   explanation.  And as far as I'm concerned with regards

19   to paragraph 48, with regards to that paragraph, his

20   explanation is satisfactory and answers any questions

21   that the Court has.  I will note that the pending

22   charges -- although there is an active warrant out, that

23   the pending charges are not scored and so you will not

24   be penalized according to the Sentencing Guidelines or

25   by the Court in their consideration of that.

1          All right.  Mr. Lee, I need to bounce back

2    to you.  I did not hear a request for restitution but I

3    have a letter in the file, a memorandum from the Fargo

4    Police Department wherein they are requesting

5    restitution of $2,000.

6          Does that remain the case?

7          MR. LANCASTER:  Your Honor, if I could speak

8    to that?

9          THE COURT:  I'd like to hear Mr. Lee first.

10          MR. LANCASTER:  That's fine, I'm sorry.

11          MR. LEE:  That is the present case, Your

12    Honor.  The Fargo Police Department at this time is

13    requesting $2,000.

14          THE COURT:  Thank you.  And, Mr. Lancaster,

15    please.  Thank you.

16          MR. LANCASTER:  I'm sorry, that is the

17    request.  I've had some discussion with Mr. Lee.  We

18    would ask that restitution be held open for 30 days.  I

19    anticipate this is going to be resolved by way of

20    stipulation but there's some further discussion after my

21    discussion with Mr. Lee and what I'm hopeful is that

22    we'll have this all taken care of early next week.

23          THE COURT:  Mr. Lancaster, why would it be

24    kept open for 30 days?

25          MR. LANCASTER:  I've made a request to

1    Mr. Lee and to have some discussion with the victim,

2    City of Fargo, and was not able to do that by today's

3    hearing.  And in all candor, Your Honor, I've asked

4    for -- and we've had our discussion about a bit of a

5    reduction from that $2,000 figure and that's why I say,

6    Your Honor, that I anticipate there's going to be a

7    stipulation but he was going to have communication with

8    them.

9              THE COURT:  Before the Court filed as

10   document 27-1 in the District Court docket is a sealed

11   memorandum from the Fargo Police Department to Mr. Lee

12   from Deputy Chief Joe Anderson.  And in that particular

13   matter the subject line is:  Restitution in the Jonathan

14   Montanez case.  The memo reads:  As a result of the

15   Fargo riot which occurred on May 30, 2020, multiple

16   Fargo Police squad cars sustained damage and the Fargo

17   Police Department is seeking restitution to cover the

18   costs relating to repairing some of the vehicles.  I'm

19   not going verbatim here but pretty close.

20             Jonathan Montanez was caught on video

21   standing, walking, and slamming his hands and fists on

22   the hood of Squad 87 which is a Ford Utility vehicle.

23   He was also seen kicking the front left quarter panel of

24   Squad 87.  Squad 87 sustained damage to the hood, to the

25   left quarter panel section, to the right rear glass

1    panel, decal lettering and clear coat finish.  The

2    actions of Mr. Montanez did not cause all of the damages

3    to Squad 87, but he emboldened others in the crowd to

4    kick and throw objects at the squad car.

5            The estimate of repair specific to Squad 87

6    is $3,633.26.  The department is seeking restitution

7    from Jonathan Montanez in the amount of $2,000.

8            The memorandum is dated February 23rd of

9    2021, which is roughly five weeks ago.

10           Anything further from the United States?

11           MR. LEE:  No, Your Honor.

12           THE COURT:  Mr. Lancaster?

13           MR. LANCASTER:  Nothing further.

14           THE COURT:  Mr. Montanez?

15           THE DEFENDANT:  No, Your Honor.

16           THE COURT:  Ms. Meidinger?

17           MR. MEIDINGER:  No, Your Honor.  Thank you.

18           THE COURT:  Mr. Montanez, you mentioned in

19   your statement that -- or in your verbal statement you

20   mentioned that you understand that this was newsworthy.

21   I want you to understand that I'm not taking that into

22   account at all and, in fact, I have not read a single

23   word about you or your actions in any news coverage.  If

24   there exists news coverage of this, I did not follow

25   that at all.  I'm -- I am assiduously -- in analyzing

1    this file, Mr. Montanez, I am assiduously trying to

2    apply the Sentencing Guidelines and to do so

3    irrespective of anything other than the guidelines and

4    the law in this matter.  I did allude to this at your

5    change of plea hearing and I understand Mr. Lancaster

6    was there and Mr. Rodenbiker was there for the United

7    States back in December when we did the change of plea

8    on this.

9           There's a couple things that I want to point

10   out to you.  One of them is that I was -- according to

11   the minute entry and according to my personal notes, I

12   was very specific and assiduous in pointing out for all

13   parties that the United States and the probation office

14   were not a party to the Plea Agreement and that the --

15   that Ms. Meidinger would be doing an offense level

16   computation based on the guidelines.

17          At that time I said:  Now you do understand

18   that if there's a different number that she comes up

19   with than what's estimated that I'm likely to land at

20   that number I believe is the language that I used?  And

21   you indicated that that was satisfactory.  The Court

22   considered that in resolving the objection to the PSIR.

23          But also with regards to the objections to

24   the PSIR, your offense conduct, the relevant conduct,

25   the entire offense relevant conduct in this matter is

1    something that I have under 2A2.4 applied for

2    obstructing or impeding officers.  But you correctly

3    note in your statement that this could have been much

4    worse.  It could have been much worse and it wasn't.

5    But the guidelines that I am applying are for

6    obstructing or impeding an officer.

7              I alluded to the 18, U.S. Code, 3553(a)

8    factors at your change of plea.  The seven factors to be

9    considered at sentencing are the nature and the

10   circumstances of the offense and the history and the

11   characteristics of the defendant.

12             No. 2 is the need for the sentence imposed

13   to reflect the four primary purposes of sentencing:

14   retribution, deterrence, incapacitation and

15   rehabilitation.

16             No. 3 is the kind of sentences that are

17   available, whether probation is prohibited or there's a

18   mandatory minimum term of imprisonment required by

19   statute.

20             No. 4 is the sentencing range established

21   through application of the Sentencing Guidelines and the

22   types of sentences that are available under the

23   guidelines.  That specific component is what we're

24   talking about when we get to the offense level and then

25   the range that's established based on your criminal

1  history.  In this case offense level eight, Criminal

2  History VI gets us to an 18 to 24-month range.

3           I've considered any relevant policy

4  statements that were promulgated by the United States

5  Sentencing Commission.  I've considered the need to

6  avoid unwarranted sentencing disparities among

7  defendants with similar records who have been found

8  guilty of similar conduct.  That is particularly crucial

9  in this case.  And then the need to provide restitution

10  to any victims of the offense.

11           Before I impose sentence, Mr. Lee, I was

12  remiss in seeking your comment on Mr. Lancaster's

13  request that restitution be left open for 30 days.  Do

14  you have a position on that?

15           MR. LEE:  I have no objection to his

16  request, Your Honor.

17           THE COURT:  Okay.  Thank you.  Mr. Montanez,

18  in the Presentence Investigation Report from paragraphs

19  23 through paragraph 59 is your criminal history.  Your

20  criminal history is partly scored, partly unscored.  In

21  the Court's eyes this criminal history is alarming.  I

22  will note that you are a young man.  In fact, I believe

23  that you will be 32 this year, this upcoming August.

24  You do have your Grade Equivalency Diploma so you have

25  some education but, you know, you're still a young man.

1              According to your criminal history as set

2    forth in paragraph 23 through paragraph 59 in the less

3    than 15 years preceding this incident there were 36

4    encounters with law enforcement by you and some of these

5    are particularly alarming.  I draw your attention to

6    paragraph 24, an assault, second degree assault with a

7    danger weapon causing substantial bodily harm.  You were

8    represented by counsel.  There was a victim who was

9    being treated for several lacerations to the head and a

10   broken hand.  This is reflective of violent conduct.  In

11   this particular case it appears that your probation was

12   revoked at least once.

13             I also draw your attention to paragraph 26,

14   a theft of property and a fleeing law enforcement.  That

15   was another case in which you initially received the

16   benefit of the doubt and received a 365-day sentence in

17   jail with 350 days suspended.  Roughly two years later

18   your probation in that matter was revoked.

19             Paragraph 29 is a hindering law enforcement

20   and a possession of marijuana charge.  In paragraph 30

21   there was a criminal charge in Fargo Municipal Court for

22   which you failed to appear and a warrant was issued, and

23   it appears that this was after sentence, again which

24   reflects failing to abide by a lawful order of a Court

25   to appear.

1          Paragraph 36, disorderly conduct in Bismarck

2     Municipal Court.  Paragraph 37, a domestic assault in

3     Clay County for which a sentence of 18 months'

4     imprisonment was imposed with all but 65 days suspended.

5     Four months later your probation was violated.  You

6     served another 30 days.  Four months after that your

7     probation was violated again and you served 18 months'

8     imprisonment on that matter.

9          Another domestic assault and subsequent

10     violation in paragraph 40 wherein sentence was imposed

11     in July of '17.  The Court again gave you the benefit of

12     the doubt even though by this time you'd had roughly 17

13     encounters with law enforcement in the previous 10

14     years.  Excuse me, I misstated that.  In the previous 12

15     years.  The Court only imposed a sentence of 365 days,

16     all but 33 days suspended and two years of probation.

17     The reward to the Court was that you violated your

18     probation and roughly seven months later were sentenced

19     to an amended sentence with an additional 30 days in

20     jail.

21          There are other examples of this as well and

22     commencing in paragraph 48 several unscored charges,

23     including fugitive from justice requiring extradition,

24     and the present case which was directly related to the

25     instant case in May of 2020 of inciting a riot,

1   terrorizing, engaging in a riot, disobedience of public

2   safety orders under riot conditions and criminal

3   mischief, willful damage, all in Cass County.

4           So the Sentencing Guidelines and the Plea

5   Agreement require the Court to impose a sentence that is

6   sufficient but not greater than necessary to accomplish

7   the purposes of the Sentencing Reform Act and in doing

8   so the Court is to consider the seven factors as set

9   forth in 18, U.S. Code, 3553(a).

10          I have considered all those factors.  I've

11  considered the Sentencing Guidelines.  I've considered a

12  Plea Agreement that although the range that was

13  contemplated by the Plea Agreement was different by the

14  parties, the commitment by the United States was to

15  recommend a sentence within the applicable guideline

16  range and recommend that you be ordered to pay

17  restitution.  I will impose a sentence that is within

18  the guideline range in this particular case.

19          Pursuant to the Sentencing Reform Act of

20  1984, it's the judgment of this Court that you shall be

21  committed to the custody of the Bureau of Prisons for 24

22  months.  You shall be on supervised release after that

23  period of incarceration for three years.  There will be

24  a $100 special assessment and the Court will leave

25  restitution open for 30 days.  In the event the parties

 1    are unable to come to some kind of adjusted amount, the

 2    intent of the Court is to impose the $2,000 request of

 3    the victim in this case in this matter.

 4              You will be subject to standard conditions

 5    and mandatory conditions and special conditions of

 6    supervised release, Mr. Montanez.  The special

 7    conditions of supervised release are set forth in the

 8    Presentence Investigation Report on page 27.  There are

 9    seven special conditions of supervised release that

10    you'll be subject to.

11              You have 14 days to appeal this under Rule

12    4(b) of the Federal Rules of Appellate Procedure.

13              Anything further from the United States?

14              MR. LEE:  No, Your Honor.

15              THE COURT:  Mr. Lancaster?

16              MR. LANCASTER:  Nothing, Your Honor.

17              THE COURT:  Do you have a BOP designation

18    request?

19              MR. LANCASTER:  If I can have just a moment?

20              THE COURT:  Yup.

21              (The defendant and his counsel conferring.)

22              MR. LANCASTER:  Request Sandstone, Your

23    Honor, or a facility as close to Moorhead, Minnesota as

24    possible.

25              THE COURT:  The recommendation of the Court

1  to the Bureau of Prisons will be that Mr. Montanez be

2  placed at Sandstone; alternatively as close to Moorhead,

3  Minnesota as possible.

4           All right.  We are adjourned.

5           (Adjourned at 10:05 a.m.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## CERTIFICATE OF REPORTER

I, Kelly A. Kroke, a duly appointed Registered Professional Reporter;

DO HEREBY CERTIFY that I reported in shorthand the foregoing proceedings had and made a record at the time and place indicated.

I DO HEREBY FURTHER CERTIFY that the foregoing and attached (36) typewritten pages contain an accurate transcript of my shorthand notes then and there taken.

Dated this 3rd day of May, 2021.

/s/ Kelly A. Kroke
KELLY A. KROKE - RPR, RMR
United States District Court Reporter
District of North Dakota
Eastern Division